# Exhibit B



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CHARITIES BUREAU

April 26, 2019

**By Overnight Mail**

National Rifle Association of America
c/o NRA OGC
11250 Waples Mill Road
Fairfax, VA 22030

**DOCUMENT PRESERVATION FOR NEW YORK STATE ATTORNEY GENERAL INVESTIGATION**

The New York State Office of the Attorney General ("OAG") is currently investigating conduct by the National Rifle Association of America, Inc. and Affiliated Entities[1] (collectively, the "NRA"), including related party transactions between the NRA and its board members; unauthorized political activity; and potentially false or misleading disclosures in regulatory filings. Such conduct may relate to violations of New York law, including but not limited to Article 7 of the Not-for-Profit Corporation Law, Article 7-A of the Executive Law, and Article 8 of the Estates, Powers, and Trust Law.

The OAG hereby requests that the National Rifle Association ("You") preserve all physical and electronic data and records, including documents and correspondence ("Records" as defined more fully in Section II, below) pertaining to matters that are the subject of this investigation. This letter provides information regarding the current scope of the investigation and the scope of the obligation to preserve Records.

---

[1] "Affiliated Entities" include, without limitation, the NRA Foundation, Inc., NRA Civil Rights Defense Fund, NRA Freedom Action Foundation, NRA Special Contribution Fund d/b/a NRA Whittington Center, NRA Institute for Legislative Action, and NRA Political Victory Fund.

## I. Current Scope of the Investigation

The scope of the investigation is subject to change based on the information collected. At the present time, You are directed to preserve all Records relating to or concerning the following subject matter areas (including communications related thereto) for the period **January 1, 2012 to the present**, and continuing thereafter:

1. Meetings of Your board of directors and any committees thereof, and any materials (e.g. board books, financial statements, budgets, memoranda) provided to or considered by the board and any committee;
2. Payments, including without limitation, compensation, reimbursements, and/or benefits, made directly or indirectly, to all board members, trustees, officers, directors, key employees, and family members or entities owned or controlled by the same;
3. Services provided by, contracts with and payments, direct or indirect, to fundraising consultants, professional fundraisers, marketing, public relations, branding, event planning, media and advertising consultants, including the contemplation or consideration thereof;
4. Membership recruitment or promotional programs, campaigns or relationships involving third parties;
5. Affinity programs with third parties, including with Lockton Affinity, LLC;
6. All transactions or consideration of transactions between You and Your board members, trustees, officers, directors, key employees, or family members or entities owned or controlled by the same;
7. All financial transactions between and among NRA Affiliated Entities;
8. Financial audits, regulatory disclosures, and/or legal compliance, including communications and information provided to outside auditors and consultants concerning the same;
9. Any coordination or communication between the NRA or NRA Affiliated Entities and any campaign for elected office;
10. All conflict of interest policies and documents concerning implementation thereof, including without limitation all conflict of interest disclosures;
11. All whistleblower policies and documents concerning implementation thereof, including any whistleblower complaints.

## II. Scope of the Obligation to Preserve

"Records" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including: including hardcopy and documentary records, and other systems, as well as electronic records, video recordings, audio recordings, e-mail, text messages, instant messages, voicemail messages or social media accounts maintained directly or by or through third parties, QuickBooks records, clinical records, billings records, computer systems, removable electronic media, and other systems. "Other systems" include word

2

processing documents, spreadsheets, databases, calendars, telephone logs, Internet usage files, and network access information. You should also preserve the following platforms in its possession or in the possession of an entity or third party under its control and/or practically accessible by You: databases, networks, computer systems, including legacy systems (hardware and software), servers, archives, backup or disaster recovery systems, tapes, discs, drives, cartridges, cloud storage, other storage media, laptops, personal computers, and tablets.

The information that should be preserved includes active data (readily accessible today), archived data (stored on backup media), and deleted data (still recoverable through the use of computer forensics).

We also request that you take affirmative steps to prevent anyone with access to your data systems and archives from seeking to modify or destroy Records on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, or the like). Likewise, for information or data that is identified as concerning or possibly concerning the investigation, we request that you take affirmative steps to prevent account holders from deleting such information and data in any way that would prevent you from recovering it in the future if needed.

To guard against inadvertent spoliation of evidence, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to above. We specifically request that you forward a copy of this letter or an equivalent notice to all of Your current board members or past board members who may have relevant information, including information stored on any personal systems, servers, or cloud-based accounts.

If you have any questions, please contact Senior Enforcement Counsel John Oleske at (212) 416-8660.

Sincerely,

James Sheehan
Bureau Chief, Charities Bureau

3



## SUBPOENA *DUCES TECUM*
## THE PEOPLE OF THE STATE OF NEW YORK

To:   National Rifle Association of America, Inc.
    c/o Brewer Attorneys and Counselors
    750 Lexington Avenue, 14th floor
    New York, NY 10022

**WE HEREBY COMMAND**, pursuant to the laws of the State of New York, including the Executive Law, the Estates, Powers and Trusts Law, and the Not-for-Profit Corporation Law, that all business and excuses being laid aside, You produce to the New York State Attorney General, Letitia James, 28 Liberty Street, New York, New York 10005, in accordance with the instructions and definitions below, any and all Documents requested in the attached Schedule that are in Your possession, custody or control, including documents in the possession, custody and control of any agent you may have. Your production of Documents in response to this subpoena should be addressed to the attention of the undersigned and may be submitted by mail or electronic mail provided it is received on or before **June 28, 2019,** or any agreed upon adjourned date thereafter.

**PLEASE TAKE NOTICE** that the Attorney General deems the Documents requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that disobedience of this subpoena by failing to deliver the documents and information requested in the attached schedule on the date, time and place stated above or any agreed adjourned date and time may subject You to prosecution under Article 23 of the New York Civil Practice Law and Rules (CPLR) and/or other statutes.

**PLEASE TAKE FURTHER NOTICE** that You shall immediately implement a litigation hold preserving all documents relating to the subject matter of this subpoena, including all documents concerning the specific documents demanded herein. (Additional subpoenas may follow.)

**PLEASE TAKE FURTHER NOTICE** that You are requested not to disclose the existence of this subpoena, its contents, or any subsequent communications with the Office of the Attorney General while this investigation is pending. Disclosure of this subpoena may impede a confidential investigation being conducted by the Attorney General. In the event You believe

1

that You are required to disclose the existence of this Subpoena or any information related thereto, You are requested to notify the Assistant Attorney General listed below immediately and well in advance of Your disclosure of same.

**WITNESS, the Honorable Letitia James**, Attorney General of the State of New York, this 3rd day of June, 2019.

By: *[signature]*
Emily Stern
Charities Bureau, Co-Chief,
Enforcement Section
(212) 416-6241
emily.stern@ag.ny.gov

# **SCHEDULE**

## A. **Instructions**

1. Please produce the Documents described in Section C of this schedule, in the accordance with the Instructions (Section A), Definitions (Section B) and format (Section D) described below.

2. Except as otherwise noted, this subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received from **January 1, 2012, through the present** (the "Relevant Period").

3. The obligation to produce Documents pursuant to this subpoena is a continuing one. Responsive Documents located any time after a response is due or submitted shall be promptly produced at the place and in the manner specified herein.

4. All Documents shall be produced with an accompanying cover letter that includes a description of the Documents being produced and their contents, the source from which the Documents have been produced, and the number(s) of the request(s) in Section C to which each Document produced is responsive. If there are no Documents in Your possession, custody or control that are responsive to any particular request, so state in writing.

5. In order for Your response to this subpoena to be complete, You must submit with the response a completed version of the attached Verification, identifying the person(s) who personally supervised the preparation and assembly of the response to this subpoena, who could testify that the response is complete and correct to the best of her or his knowledge and belief and that all Documents produced are authentic, genuine and what they purport to be.

6. If any Document requested was formerly in Your possession, custody or control but is no longer available or no longer exists, submit a statement in writing and under oath that: (i) describes in detail the nature of the Document and its contents; (ii) identifies the person who prepared the Document; (iii) identifies all persons who have seen or had possession of the Document; (iv) specifies the dates on which the Document was prepared, transmitted or received; (v) specifies the date on which the Document became unavailable; (vi) specifies the reason why the Document is unavailable, including whether it has been misplaced, lost, destroyed or transferred, and, if it has been destroyed or transferred, specifies the conditions of and reasons for such destruction or transfer and the persons who requested and performed the destruction or transfer; and (vii) identifies all persons with knowledge of any portion of the contents of the Document.

7. If any Document requested is withheld on ground of privilege or other legal doctrine, submit with the production a statement in writing and under oath (e.g., a privilege log) that provides, for each Document withheld: (i) a description of the nature of the Document and its contents; (ii) the date of the Document; (iii) the Document's authors and recipients; and (iv) the legal ground for withholding it from production. If the legal ground is attorney-client privilege, please also indicate the names of the attorneys involved in the Document and the nature of their involvement (e.g., as authors). Such statement (or log) shall accompany each production. Further, for each Document withheld pursuant to this paragraph, the relevant

3

production shall include placeholder pages equivalent in number to the page-length of the withheld Document.

    8.    Format for Production: Unless otherwise specified and agreed to by the Office of the Attorney General, responsive Documents shall be produced in their <u>original format</u>, whether hard copy or electronic.

**B.    Definitions**

    1.    "NRA" shall mean the National Rifle Association of America, Inc. (the "NRA") together with (i) any of its directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on its behalf, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with NRA, including by possessing, directly or indirectly, the power to direct or cause the direction of NRA's management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

    2.    "NRA Affiliated Entities" means each of the NRA's affiliated and related entities, including, but not limited to, The NRA Foundation, Inc., the NRA Civil Rights Defense Fund, the NRA Freedom Action Foundation, and the NRA Special Contribution Fund dba the NRA Whittington Center, together with (i) any of their directors, officers, agents, employees, consultants, representatives, attorneys, and other persons acting on their behalf, (ii) any predecessors, successors, parent corporations, subsidiaries, divisions, assigns, "d/b/a" names, and affiliates, and (iii) any entities that, directly or indirectly, control, are controlled by, or are under common control with the NRA, including by possessing, directly or indirectly, the power to direct or cause the direction of the NRA's management and policies, whether through membership, the ownership of voting securities, by contract, or otherwise.

    3.    "Key Person" shall have the same meaning as that term is defined in Not-for-Profit Corporation Law ("N-PCL") § 102(25).

    4.    "Concerning" or "relating to" shall mean concerning, relating to, referring to, referencing, describing, evidencing, or constituting, either directly or indirectly and in whole or in part.

    5.    "Documents" is used in the broadest sense of the term and shall mean all records and other tangible media of expression of any nature, including: originals, drafts or finished versions; annotated or nonconforming or other copies, however created, produced or stored (manually, mechanically, electronically or otherwise); electronic mail ("email"), instant messages, Blackberry or other wireless device messages; voicemail; books, papers, files, notes, correspondence, memoranda, reports, records, journals, summaries, registers, account statements, analyses, plans, manuals, policies, telegrams, faxes, wires, telephone logs, telephone messages, or message slips; minutes, notes, records or transcriptions of conversations, communications or meetings; video and audio tapes; disks and other electronic media; microfilm, microfiche;

4

storage devices; press releases; contracts, agreements; calendars, date books, appointment books and diaries; notices and confirmations. A draft or non-identical copy is a separate Document. Documents existing in electronic form shall include all items that may have been removed from the email accounts, directories or other locations in which they are ordinarily stored to any other servers, folders, files, archives, or backup devices, whether or not deleted.

      6.     "You" or "Your" shall mean the NRA and any of Your officers, directors, employees, agents, attorneys, representatives, consultants, and any other persons acting on Your behalf.

      7.     "Identify" or "identity" as applied to (i) any natural person shall mean to provide her or his name, titles, aliases, screen names, and contact information, including each of her or his home and business addresses, email addresses, and phone numbers; (ii) any entity shall mean to provide the name, d/b/a names, if any, and contact information; (iii) an account with a financial institution shall mean to provide the name of the institution, its address, the names of the account holders, the account number, the type of account, all signatories on the account, and all individuals authorized to use a credit, debit, or ATM card relating to the account; (iv) a financial transaction shall mean to provide the type of transaction (e.g., donation, grant, withdrawal, deposit, or disbursement), the amount, date, payor, grantor, donor or other party disbursing the funds, the payee, grantee, donee or other party receiving the funds, the reason for the transaction, and any applicable terms or restrictions; (v) an agreement shall mean to provide the terms of the agreement and any amendments; and (vi) any other thing shall mean to describe the thing in detail.

      8.     "Person" shall mean any natural person or entity, including any corporation, company, limited liability corporation or company, partnership, limited partnership, association, or firm.

      9.     "And" and "or" shall be construed disjunctively or conjunctively, as necessary to bring within the scope of a request all responses and Documents that might otherwise be deemed outside the scope of that request.

      10.    "All" shall mean "each and every."

      11.    "Any" shall mean "any and all."

      12.    The singular form of any word shall include the plural and vice versa.

      13.    Any word used but not defined herein shall be construed consistently with its common meaning.

## C.     Documents to be Produced

1.     All documents concerning transactions between You and any (a) director, officer, trustee or Key Person of the NRA or any of the NRA Affiliated Entities; (b) other person who exercises the powers of directors, officers or Key Persons over the affairs of the NRA or any of the NRA Affiliated Entities; (c) relative of any director, officer, trustee or Key Person of the NRA or any of the NRA Affiliated Entities; or (d) entity in which any director, officer, trustee or Key Person or relative of the same has a 35% or greater ownership or beneficial interest, or in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of 5%, including without limitation:

    a.     the terms and conditions of the transaction;

    b.     revenues, expenses, payments or any other aspects of the finances of such transactions; and

    c.     review and approval of such transactions and consideration of alternative transactions by the NRA's Board of Directors or any committee of the NRA's Board of Directors.

2.     To the extent not responsive to Request No. 1(a), (b) or (c), documents concerning transactions between You and:

    a.     any of the NRA Affiliated Entities, including without limitation any loans to or from, or agreements to provide services to or by, any of the NRA Affiliated Entities;

    b.     any current or former NRA directors, officers or Key Persons for any provision of services to the NRA, including without limitation, transactions with directors Peter Brownwell, David Butz, Sandra S. Froman, Marion P. Hammer, David A. Keene, Craig Morgan, Ted Nugent, Lance Olson, Mercedes V. Schlapp, Bart Skelton or Howard J. Walter;

    c.     any entities owned or controlled by any of current or former NRA directors, officers or Key Persons, including without limitation agreements with any entities in which any of the officers, directors, Key Persons, or their relatives are owners, officers, directors, or Key Persons;

    d.     Wayne Sheets, Linda Sheets, or H.W.S. Consulting, Inc.;

    e.     any of the directors, officers or Key Persons of any of the NRA Related Entities or any entities controlled by the same; and

    f.  any vendors employing relatives of any directors, officers or Key Persons of the NRA or any of the NRA Affiliated Entities, including without limitation McKenna & Associates.

  3. All conflicts of interest policies or procedures and documents concerning implementation thereof.

  4. All policies and procedures concerning review and approval by the Board of Directors or any committee of the Board of Directors of transactions between the NRA and any (a) director, officer, trustee or Key Person of the NRA or any of the NRA Affiliated Entities; (b) other person who exercises the powers of directors, officers or Key Persons over the affairs of the NRA or any of the NRA Affiliated Entities; (c) relative of any director, officer, trustee or Key Person of the NRA or any of the NRA Affiliated Entities; or (d) entity in which any director, officer, trustee or Key Person or relative of the same has a 35% or greater ownership or beneficial interest, or in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of 5%.

  5. All bylaws in effect at any time between 2012 and the present concerning or referring to conflict of interest.

  6. All policies and procedures in effect at any time between 2012 and the present concerning or referring to or defining conflict of interest.

  7. All conflict of interest disclosure forms prepared for, by, or on behalf of any director, officer, or Key Person of the NRA, including but not limited to, Michael Marcellin, Joshua Powell, and Joe Bergalis, at any time between 2012 and the present.

  8. All communications to officers, directors, or Key Persons regarding conflict of interest disclosure requirements at any time between 2012 and the present.

  9. All documents being or demonstrating compliance with N-PCL § 715-a, and/or any NRA policy or procedure, governing disclosure of conflicts of interest by directors, officers or Key Persons.

  10. All documents being or demonstrating compliance by the NRA Board of Directors or any committee thereof, with the obligations set forth in N-PCL § 715 concerning related party transactions at any time between 2014 to the present, including without limitation: (a) all documents showing the vote of each director in reviewing any related party transaction under N-PCL § 715; and (b) all documents showing the abstention or recusal of any director in reviewing any related party transaction under N-PCL § 715.

  11. All documents being, containing, or requesting communications to vendors or proposed vendors or other third parties concerning NRA conflict of interest policies.

7

12. All documents relating to any action taken by the NRA or the NRA Board of Directors or any committee of the Board of Directors to address retroactively or to remedy any failure to comply with N-PCL § 715 regarding review of related party transactions.

13. All documents relating to any authorization, review, or approval of any payments to Michael Marcellin by any person or entity other than the NRA, including but not limited to Lockton Affinity.

14. All discipline or corrective action undertaken concerning any violation of the conflict of interest policy in effect at the time of the violation.

D. **Format for Production**

Unless otherwise specified and agreed to by the Office of Attorney General, all responsive documents must be produced in Concordance format in accordance with the following instructions.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 2.

    A. *Metadata Load File*
    B. *Extracted or OCR Text Files*
    C. *Single-Page Image Files*
    D. *Opticon Load File*
    E. *Native Files*.

2. <u>Production File Requirements</u>.

    A. *Metadata Load File*
    - Required file format:
        - UTF-8
        - .dat file extension
        - Field delimiter: (ASCII decimal character 20)
        - Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)
    - The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 1.
    - Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
    - *Note:* All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.
    - Accepted date formats:
        - mm/dd/yyyy
        - yyyy/mm/dd
        - yyyymmdd
    - Accepted time formats:
        - hh:mm:ss (if not in 24-hour format, You must indicate am/pm)
        - hh:mm:ss:mmm

    B. *Extracted or OCR Text Files*

9

- You must produce individual document-level text files containing the full extracted text for each produced document.
- When extracted text is not available (for instance, for image-only documents) You must provide individual document-level text files containing the document's full OCR text.
- The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
- Text files must be divided into subfolders containing no more than 5000 files.

C. ***Single-Page Image Files (Petrified Page Images)***
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files. See Section 7.E below for instructions on producing native versions of documents You are unable to convert.
- Image documents that exist only in non-TIF formats must be converted into TIF files. The original image format must be produced as a native file as described in Section 7.E below.
- For documents produced only in native format, You must provide a TIF placeholder that states "Document produced only in native format."
- Each single-page TIF file must be endorsed with a unique Bates number.
- The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
- Required image file format:
  - CCITT Group 4 compression
  - 2-Bit black and white
  - 300 dpi
  - Either .tif or .tiff file extension.
- TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

D. ***Opticon Load File***
- Required file format:
  - Field delimiter: , (ASCII decimal character 44)
  - No Text Qualifier
  - .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
  - ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  - VOLUME – this value is optional and may be left blank.

10

- o   RELATIVE PATH – the filepath to each single-page image file on the production media.
- o   DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
- o   FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
- o   BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
- o   PAGE COUNT – this value is optional and may be left blank.
- ***Example***:
  ABC00001,,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,,IMAGES\0002\ABC00004.tif,Y,,,1

E.  ***Native Files***
- Non-printable or non–print friendly documents (including but not limited to spreadsheets, audio files, video files and documents for which color has significance to document fidelity) must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, You must assign a single document-level Bates number and provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.
- You may be required to supply a software license for proprietary documents produced only in native format.

3. Production Folder Structure. The production must be organized according to the following standard folder structure:
- data\ (contains production load files)
- images\ (contains single-page TIF files, with subfolder organization)
  \0001, \0002, \0003…
- natives\ (contains native files, with subfolder organization)
  \0001, \0002, \0003…
- text\ (contains text files, with subfolder organization)
  \0001, \0002, \0003…

4. De-Duplication. You must perform global de-duplication of stand-alone documents and

11

       email families against any prior productions pursuant to this or previously related subpoenas.

5. <u>Paper or Scanned Documents</u>. Documents that exist only in paper format must be scanned to single-page TIF files and OCR'd. The resulting electronic files should be produced in Concordance format pursuant to these instructions. You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

6. <u>Structured Data</u>. Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the subpoena.

    A. <u>Relational Databases</u>

       **1.** Database tables should be provided in d or other machine-readable, non-proprietary format, with each table in a separate data file. Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

       **2.** Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

       **3.** Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

7. <u>Media and Encryption</u>. All document sets over 2 GB must be produced on CD, DVD, or hard-drive media. All production media must be encrypted with a strong password, which must be delivered independently from the production media. Document sets under 2 GB may be delivered electronically. The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties' server.

## ATTACHMENT 1
## Required Fields for Metadata Load File

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name… |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

13

| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
|---|---|---|
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect... |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | |
| REVISION | Number of revisions to a document. | 18 |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |

| | | |
|---|---|---|
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| MSGINDEX | Email message ID | |
| CONVERSATIONINDEX | Email Conversation Index | |

## VERIFICATION

This response to the subpoena of the Attorney General of the State of New York dated June 3, 2019, including production of the requested Documents, was prepared and assembled under my personal supervision from my records in accordance with the instructions and definitions set forth in such subpoena and is complete and correct to the best of my knowledge and belief. The Documents produced in response to this subpoena are authentic, genuine and what they purport to be.


_____     _____
(Signature of Official)            (Title)


_____
(Type or Print Name of Above Official)


\*\*\*


Subscribed and sworn to before me this _____ day of _____ 2019.


_____ Notary Public


My commission expires _____

16