# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State
of New York,

            Petitioners,

-against-

ACKERMAN McQUEEN and the NATIONAL RIFLE
ASSOCIATION OF AMERICA, INC.,

            Respondents.

Index No. _____
Hon. _____

**AFFIRMATION OF GOOD FAITH AND IN SUPPORT OF THE OFFICE OF THE ATTORNEY GENERAL'S ORDER TO SHOW CAUSE TO COMPEL COMPLIANCE WITH AN INVESTIGATORY SUBPOENA**

-------------------------------------------------------------------X

  MONICA CONNELL, an attorney duly admitted to the Bar of this State, affirms under penalties of perjury pursuant to Civil Practice Law and Rules 2106 as follows:

  1.  I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, who appears on behalf of the People of the State of New York in this special proceeding.

  2.  I submit this Affirmation in support of the Office of the Attorney General's application by order to show cause seeking expedited relief in connection with an investigatory subpoena, dated July 8, 2019 (the "Subpoena"), issued by the Attorney General to Respondent Ackerman McQueen in connection with an investigation of the National Rifle Association of America, Inc.

  3.  I am familiar with the facts and circumstances set forth in this affirmation, which are based upon my personal knowledge and information contained in the files of the Office of the Attorney General ("OAG").

1

4. As set forth below and in the accompanying Verified Petition and Memorandum of Law, the OAG has endeavored to resolve the issue of Ackerman McQueen's compliance with the investigatory subpoena with both Ackerman McQueen and the National Rifle Association of America, Inc. and has been unable to reach a resolution. The OAG now seeks an order pursuant to CPLR 2308(b) to enforce its non-judicial subpoena without further delay or interference. In addition, based upon the facts set forth below, OAG asks that this proceeding and application be marked as a related proceeding to *National Rifle Association of America, Inc. v. Letitia James*, Supreme Court, New York County Index No. 158019/2019.

**The OAG Served a Subpoena *Duces Tecum* on Respondent Ackerman McQueen as Part of Its Law Enforcement Investigation of Respondent National Rifle Association of America, Inc.**

5. As set forth in greater detail in the accompanying Memorandum of Law, the Attorney General is vested with expansive oversight authority of not-for-profit entities, their representations to donors and potential donors, and their use of charitable assets under the Not-for-Profit Corporations Law, the Estates, Powers and Trusts Law and the Executive Law.

6. Respondent National Rifle Association of America, Inc. is a not-for-profit charitable organization organized under the laws of the State of New York. It (including its affiliated not-for-profit and charitable entities)[1] (collectively "NRA"), is the subject of an OAG investigation concerning, *inter alia*, allegations of financial improprieties; improper related party transactions between the NRA and affiliated entities, officers and board members; unauthorized political activity; and potentially false or misleading disclosures in regulatory filings. Such

---

[1] "Affiliated entities" include, without limitation, the NRA Foundation, Inc., NRA Civil Rights Defense Fund, NRA Freedom Action Foundation, NRA Special Contribution Fund d/b/a NRA Whittington Center, NRA Institute for Legislative Action, and NRA Political Victory Fund.

conduct, if true, could constitute serious violations of New York law governing not-for-profit organizations, including Article 7 of the Not-for-Profit Corporation Law, Article 7-A of the Executive Law, and Article 8 of the Estates, Powers, and Trust Law.

7. As part of the OAG investigation, on May 3, 2019, the OAG issued a document preservation notice to Respondent Ackerman McQueen ("AMQ").[2] Obtaining information from AMQ is important to the investigation in light of AMQ's unique relationship to the NRA. AMQ was formerly the NRA's longtime advertising and public relations firm. Information obtained by the OAG, including information included in the NRA's official disclosures, raised serious questions regarding the NRA's payments to AMQ and other vendors. *See* Verified Petition, Ex. 2 (the NRA's 2017 Form 990, Part VII, Section B). In fact, AMQ was identified as having received more than $20 million from the NRA in 2017 for public relations and advertising services but the NRA's official filing, called the "Form 990," shows that AMQ had actually received close to $39 million in compensation and other payments from the NRA that year. Separately in the Form 990's Schedule O, the NRA disclosed that the $20 million sum excluded over $11 million the NRA reimbursed AMQ for out of pocket expenses, as well as millions more which the NRA paid to AMQ affiliates. AMQ and the NRA have ceased doing business together and are now engaged in no less than four separate civil litigations.

8. On July 8, 2019, OAG issued a subpoena to AMQ. *See* Verified Petition, Ex. 8.

**AMQ Is Willing to Comply with the Subpoena But the NRA Has Asserted that AMQ Cannot Do So Without Obtaining the NRA's Approval for All Materials Produced Pursuant to a Contractual Non-Disclosure Agreement the Parties Signed.**

9. AMQ has expressed its willingness to comply with the OAG subpoena, but asked

---

[2] AMQ and Mercury are herein referred to collectively as "AMQ" both in this proceeding and application and in the Subpoena.

3

has indicated that it faces a risk of litigation by disclosing responsive information without first allowing the NRA to review all responsive information it intends to produce and then obtaining the NRA's express approval to produce materials because of a "Services Agreement" it signed with the NRA. *See* Verified Petition, Ex. 1.

10. The Services Agreement contains a "Confidentiality Provision" (hereinafter the "NDA") which provides in relevant part that:

> [AMQ] shall not disclose, directly or indirectly, to any third party any NRA membership data or mailing lists, any materials or information relating thereto, **or any other data, materials or information coming to the knowledge of [AMQ], supplied to [AMQ] by NRA, or otherwise made known to [AMQ] as a result of [AMQ's] providing services…without the prior express written permission of NRA.**

*See* Verified Petition, Ex. 1, p. 6 (emphasis added). The Services Agreement contains no exception or "carve out" for law enforcement purposes.

11. The OAG has met and conferred and endeavored to resolve this issue with AMQ. *See* Verified Petition, Ex. 9. The OAG has allowed AMQ to produce the initial batch of responsive information following review by and with the approval of the NRA. However, based upon governing law, a review of the materials produced, discussions with AMQ, the investigation overall, and earlier proceedings between the OAG and the NRA, discussed below, the OAG can no longer allow the NRA, the subject of its investigation, to preview, monitor, control and potentially withhold information it is entitled to obtain by law.

**Contrary to Law, the NRA Has Interpreted the NDA to Preclude AMQ's Direct Compliance with the Subpoena Without the NRA's Prior Review and Approval of Any Production, Necessitating the Need for this Application.**

12. OAG has corresponded and met and conferred with both AMQ and NRA to address this problem. *See* Verified Petition, Exhibits 6, 7, 8 and 9.

13. On September 27, 2019, the OAG spoke to counsel for AMQ by phone in a final

4

attempt to resolve this issue. AMQ's counsel again confirmed AMQ's position that it is willing to comply with the Subpoena and produce responsive information directly to the OAG but for the NRA's continued insistence that it must preview and grant permission for the release of such information pursuant to the NDA.

14. In a final attempt to meet and confer on this issue with the NRA, on September 26, 2019, the OAG called NRA counsel, specifically Svetlana Eisenberg, Esq. and William Brewer, Esq., and asked the NRA to confirm whether it was still maintaining its position. Counsel confirmed that it has "absolutely 100%" been the NRA's position that the NDA prevents AMQ from providing responsive information to the OAG in compliance with the Subpoena absent the NRA's review and express written permission. Counsel did not cite any authority for this point but asked to have a day to consider and look into the matter.

15. On September 27, 2019, the OAG and NRA counsel spoke again by phone, this time to counsel Sarah Rogers, Esq. and Alexander Stoczko, identified on the website of Brewer, Attorneys & Counselors, as a senior analyst.

16. Ms. Rogers acknowledged precedent limiting the use of contractual non-disclosure agreements in regard to law enforcement investigations, but stated that she interpreted such authority to only limit the enforcement of NDAs where the subject of the investigation determines that the NDA is impeding the investigation. Here, the NRA does not deem that the NDA is impeding the OAG's investigation. When pressed as to whether the NRA was asserting that the NDA controlled AMQ's production of documents to the OAG, Ms. Rogers affirmed that that was the NRA's position and indicated that the NRA would "continue to insert itself to review documents." Accordingly, the OAG has no option except to seek relief from the Court.

17. During the call, the NRA raised a right to object to the production of responsive

5

documents by third party AMQ as barred by attorney-client, attorney work product, common interest, and First Amendment privileges. Counsel was unable to identify any specific document or categories of documents which would be responsive to a demand in the Subpoena.[3] Counsel candidly admitted that she had not reviewed the subpoena in preparation for the meeting and did not have it readily accessible. Ms. Rogers did posit some hypothetical types of information which AMQ might have and which she asserted might be privileged. But she provided no basis for the assertion that information possessed by a third party would be privileged other than the assertion that AMQ had been the NRA's advertising and "crisis management" firm for decades and so was the "functional equivalent" of the NRA and thus privilege would attach to unspecified documents. In regard to the First Amendment objection, the NRA seemed to be objecting to the release of donor or member identities. But all counsel indicated was that AMQ might have lists of donors who were invited to unspecified events and may have "troves" of the names of people, both members and non-members, who may have visited certain NRA-affiliated websites which AMQ allegedly oversaw. Counsel was unaware of whether any such material was actually possessed by AMQ or responsive to any demand. While admitting that a party who feared the release of privileged or other information in response to a subpoena could move to quash or modify such subpoena, counsel did not contest or explain why the NRA has not so moved in the two and half months since the subpoena was served.

18. When pressed as to whether the NDA and the assertions of privilege are in fact separate and separable issues, counsel declined to agree that they were separate. In sum, the NRA

---

[3] There was one exception to this. Ms. Rogers indicated that she believed one email cover sheet had been withheld from production on the basis of privilege but she could not recall whether it was in regard to the AMQ production in response to the OAG's subpoena or another matter or other details. Certainly, the OAG has not received any notice that a responsive document has been withheld on any basis.

6

confirmed its position that it interprets the NDA to prohibit AMQ from complying with the subpoena by directly producing responsive information to the OAG absent, at a minimum, the NRA's review of the material and express approval for production. It has also raised blanket and vague assertions of privilege.

19. At 9:25 p.m. on September 27, 2019, Ms. Rogers sent an email to the OAG again asserting the NRA's intention to seek to enforce the NDA in relation to AMQ's compliance with the Subpoena. (Exhibit 2.) The OAG and the NRA first discussed the enforceability of NRA NDAs in regard to this investigation, at the latest, during a June 6, 2019 meeting. Much correspondence has been exchanges since that time. Despite having had almost four months to research and consider this issue, in her email, counsel failed to identify a single case which would support the application of the NDA to the Subpoena at issue here. Nor has she specifically identified the basis for any privilege, other than to cite two readily distinguishable federal cases relating to attorney client privilege.[4]

20. The NRA has not moved to quash the AMQ subpoena, but instead has elected to interpret the NDA in a manner that is contrary to law but effective as a means to delay and hamper

---

[4] As discussed in greater length in the accompanying Memorandum of Law, the two cases, *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011), *on reconsideration in part*, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013), and *Export–Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y.2005), are distinguishable and inapposite. The NRA apparently is attempting to argue that all employees of AMQ, and AMQ as a whole, are the "functional equivalent" of an employee of the NRA, such that they may be party to privileged communications without effecting waiver." (Exhibit 2, at fn. 2.) But neither case involves an investigatory subpoena or state regulation and both involve detailed and narrow requests for an extension of privilege based upon an evidentiary showing. In fact, in *Export-Import Bank*, the court declined to recognize a third party as the "functional equivalent" of an employee for privilege purposes despite a significant showing, and held "[t]he attorney-client privilege should not be expanded without considerable caution because the privilege 'stands in derogation of the public's 'right to every man's evidence.'" *Id.*, at 114, *citing In re Horowitz*, 482 F.2d 72, 81 (2d Cir.1973)(quoting 8 Wigmore, Evidence § 2192 (McNaughton rev.1961), at 70).

7

AMQ's subpoena compliance with the threat of more costly litigation. In any event, as has been communicated to the NRA repeatedly, the OAG will maintain information it receives in a secure and confidential manner. For example, in a June 5, 2019 email to NRA counsel, the OAG confirmed in writing that the OAG wants "to continue to be responsive to your concerns within the bounds of appropriate discussions with a third party to a duly served investigative subpoena.... As an initial matter, the OAG will use the information it obtains in this investigation only for the purposes of this investigation and any resulting proceedings or referrals. As for all of our matters, the OAG will handle and maintain sensitive information, including non-public financial information, in a secure and appropriate manner. The Attorney General's Charities Bureau routinely receives sensitive information regarding charitable organizations, including non-public financial information. It is securely maintained within the Office. Further, our ethical duties as attorneys and relevant exemptions from public disclosure under the Freedom of Information Law apply to such information and limit its dissemination....Further, we represent to you that we will not disclose or share the NRA's financial information with others within New York State government for use in other currently pending litigation – here we assume that you are referring the litigation *NRA v. Cuomo*, NDNY Case No. 18-cv-566."

21.  We have confirmed that AMQ, which is represented by two respected law firms, is performing a privilege review on information to be produced. Absent specific documents or categories of information about which the NRA is concerned, their assertions of privilege simply can't be used to render the NDA enforceable and lack merit.

22.  As set forth in the accompanying Memorandum of Law, it is respectfully submitted that the OAG is entitled to an order compelling AMQ to comply directly with the subpoena without the need to allow the NRA to pre-review and approve any information released in compliance with

8

the subpoena and without delaying or altering any aspect of that compliance so as to conform to any purported obligations under the NDA contained within the NRA Services Agreement.

**This Matter Should is Related to the NRA's Previous Application Before the Hon. Melissa A. Crane for Relief in Regard to a Non-Judicial Subpoena in Connection with the OAG Investigation of the NRA.**

23. On or about August 16, 2019, the NRA commenced a special proceeding by order to show cause challenging a non-judicial subpoena *testificandum* to Lt. Col. Oliver North, a former President and current Board member of the NRA. The NRA demanded the right to attend the OAG's investigative questioning of former NRA President Lt. Col. Oliver North, and to object to his statements. *See National Rifle Association of America, Inc. v. Letitia James*, Index No. 158019/2019. The matter was fully briefed. The nature of the OAG's investigation of the NRA was discussed. Argument was held on two days, August 16 and 19, 2019.

24. Ultimately, the Hon. Melissa A. Crane denied the NRA's application and held that "[h]aving the NRA or its Board sit in on an investigatory deposition by law enforcement could have the serious consequence of compromising the integrity of that investigation." *See* Verified Petition, Ex. 4. A copy of the August 19, 2019 Transcript is annexed hereto as Exhibit 1.

25. Following the issuance of the decision from the bench, the NRA counsel Svetlana Eisenberg indicated that the Court had "alluded to sort of what happens down the road, who knows how it will evolve. We respectfully request that the Court maintain jurisdiction over this." The OAG consented to the same and the Court agreed to do so. Exhibit 1, p. 29.

26. The NRA immediately sought a stay from the Appellate Division, First Department, which denied the application; the NRA ultimately withdrew its challenge to this Court's decision.

27. In that instance, the NRA unsuccessfully sought to be present and to monitor

9

testimony sought by the OAG. Now it is using a non-disclosure agreement in a private contract in a matter which hinders third party compliance with OAG subpoenas.

28. Given the Hon. Melissa Crane's familiarity with the investigation, the prior proceeding, and the parties' agreement that the Court retain jurisdiction, it is respectfully submitted that this proceeding and application should be heard by Judge Crane.

**Expedited Resolution of this Application is Appropriate.**

29. As set forth in the accompanying Memorandum of Law, the proposition that a contractual NDA can be applied to prevent, condition or limit compliance with the OAG's investigation is contrary to law.

30. Expedited briefing and resolution of the motion to compel is necessary to prevent further unnecessary delay and interference with the OAG's investigation. Documents obtained from AMQ may be used to question witnesses or to seek other and further documents from the NRA and others.

31. Notably, so far in this investigation, the NRA, the NRA Foundation, and the NRA Board have produced comparatively few documents in response to months old subpoenas issued to them and have asked for rolling production of responsive information to allow for review. Among its investigative activities, OAG has followed up with the NRA, the NRA Foundation and the NRA Board, as well as some individual Board members, but despite this, production is far from done and OAG has noted some glaring omissions in production thus far.

32. Information from third parties is necessary to help ensure that the OAG is receiving materials responsive to its demands from the NRA, in order for the OAG to make necessary follow-up demands, and for the OAG to make certain that it is appropriately investigating the NRA's governance and conduct as a not-for-profit in the face of serious and substantial allegations of

10

potential wrongdoing.

33. The NRA's ability to hamper compliance by potential witnesses, like AMQ, coupled with its slow production, unnecessarily delay and interfere with the OAG investigation and threaten its integrity by allowing the NRA, the subject of the investigation, to monitor and act as gatekeeper for information the OAG receives. For that reason, the OAG asks for expedited briefing and resolution of this application..

34. Information from third parties is necessary to help ensure that the OAG is receiving materials responsive to its demands from the NRA and for the OAG to make certain that it is appropriately and thoroughly investigating the NRA's governance and conduct as a not-for-profit in the face of serious and substantial allegations of potential wrongdoing. The NRA's ability to hamper compliance by potential witnesses, like AMQ, coupled with its slow production and earlier attempt to monitor the investigation, unnecessarily delay and threaten the integrity of the OAG investigation.

35. For that reason, the OAG asks for expedited briefing here and for an order compelling AMQ to comply with OAG's July 8, 2019 subpoena without the need to allow the NRA to pre-review and approve any information released in compliance with the subpoena and without delaying or altering any aspect of that compliance so as to conform to any purported obligations under the NDA contained within the NRA Services Agreement and granting such other and further relief as it deems just, proper and appropriate.

36. Petitioner has not previously requested or sought the relief sought herein in this or any other Court.

Dated: New York, New York
September 30, 2019

_____
Monica Connell