IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF
AMERICA,
    *Plaintiff,*

v.

LETITIA JAMES, both individually and
in her official capacity,
    *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§

Case No. 1:20-cv-00889-MAD-TWD

**BRIEF OF THE STATES OF ARKANSAS, ALASKA, GEORGIA, IDAHO, MISSISSIPPI, OKLAHOMA, KANSAS, KENTUCKY, LOUISIANA, MISSOURI, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, AND WEST VIRGINIA AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF AND IN OPPOSITION TO DISMISSAL**

Leslie Rutledge
  *Arkansas Attorney General*
Nicholas J. Bronni
  *Solicitor General*
Vincent M. Wagner
  *Deputy Solicitor General*
Dylan L. Jacobs
  *Assistant Solicitor General*
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
dylan.jacobs@arkansasag.gov

Steven E. Losquadro
  STEVEN E. LOSQUADRO, P.C.
649 Route 25A, Suite #4
Rocky Point, New York 11778
(631) 744-9070
losquadrolaw@aol.com

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

Table of Contents.................................................................................................................i

Table of Authorities ...........................................................................................................ii

Introduction ........................................................................................................................1

Argument.............................................................................................................................2

I.   The Second Amendment guarantees an individual right to keep and
     bear arms......................................................................................................................2

II.  State regulation of nonprofit and charitable organizations is essential to
     protecting the public....................................................................................................3

III. The NRA and its members are entitled to First Amendment protection
     from the New York AG's discriminatory dissolution action.......................................6

     A.   The NRA's political speech is protected by the First Amendment............................7

     B.   The NRA has adequately alleged that the New York AG is violating
          the constitutional rights of the organization and its members. ...................................8

          1.   First Amendment Retaliation ...........................................................................9

          2.   Associational rights of NRA members ............................................................10

          3.   Equal Protection.............................................................................................11

IV.  This Court is the proper forum for the NRA to seek relief.........................................12

Conclusion.........................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ................................................................................................. 8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ................................................................................................. 8

Burch v. Pioneer Credit Recovery, Inc.,
551 F.3d 122 (2d. Cir. 2008) ................................................................................... 8

Burford v. Sun Oil Co.,
319 U.S. 315 (1943) ............................................................................................... 15

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) ..................................................................................... 8

Citizens United v. Fed. Election Comm'n,
558 U.S. 310 (2010) ................................................................................................. 8

Cullen v. Fliegner,
18 F.3d 96 (2d Cir. 1994) ....................................................................................... 14

Diamond "D" Constr. Corp. v. McGowan,
282 F.3d 191 (2d Cir. 2002) ................................................................................... 14

District of Columbia v. Heller,
554 U.S. 570 (2008) ................................................................................................. 3

District of Columbia v. NRA Found.,
No. 2020-CA-003454 (D.C. Sup. Ct. Aug. 6, 2020) ............................................. 10

Dorsett v. Cty. of Nassau,
732 F.3d 157 (2d Cir. 2013) ..................................................................................... 9

Ex parte Young,
209 U.S. 123 (1908) ............................................................................................... 12

FTC v. Superior Ct. Trial Lawyers Ass'n,
493 U.S. 411 (1990) ................................................................................................. 7

Hachamovitch v. DeBuono,
159 F.3d 687 (2d Cir. 1998) ............................................................................. 15, 16

Harper v. Va. State Bd. of Elections,
383 U.S. 663 (1966) ............................................................................................... 11

Healy v. James,
408 U.S. 169 (1972) ............................................................................................... 12

Hill v. Colorado,
530 U.S. 703 (2000) ................................................................................................. 8

*Kentucky v. Graham,*
　473 U.S. 159 (1985) .......................................................................................................... 12

*McDonald v. City of Chicago,*
　561 U.S. 742 (2010).......................................................................................................... 3

*Meyer v. Grant,*
　486 U.S. 414 (1988)...................................................................................................... 7, 11

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
　491 U.S. 350 (1989)...................................................................................................... 13, 15

*New York Times Co. v. Sullivan,*
　376 U.S. 254 (1964)........................................................................................................... 8

*Pennhurst State Sch. & Hosp. v. Halderman,*
　465 U.S. 89 (1984)............................................................................................................ 12

*People v. Zymurgy, Inc.,*
　233 A.2d 178 (N.Y. App. Div. 1996)................................................................................. 4

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
　487 U.S. 781 (1988)........................................................................................................... 4

*Roth v. United States,*
　354 U.S. 476 (1957)........................................................................................................... 8

*Spargo v. N.Y. State Comm'n on Jud. Conduct,*
　351 F.3d 65 (2d Cir. 2003) .............................................................................................. 13

*Sprint Commc'ns, Inc. v. Jacobs,*
　571 U.S. 69 (2013)............................................................................................................ 13

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n,*
　389 U.S. 217 (1967)........................................................................................................... 7

*Younger v. Harris,*
　401 U.S. 37 (1971).................................................................................................... 13, 14

**Statutes**

Ark. Code Ann. 4-28-101.................................................................................................... 3

Ark. Code Ann. 4-28-222

Ark. Code Ann. 4-28-416(a)(2) .......................................................................................... 3

**Other Authorities**

Bob Carlson, et al., Protection and Regulation of Nonprofits and Charitable Assets, STATE AT-
TORNEYSGENERAL POWERS AND RESPONSIBILITIES 205 (Nat'l Ass'n of Attorneys Gen. 2013)
.............................................................................................................................................. 4

David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Aug. 26, 2020)................................ 6

*Montana Attorney General's Investigative Report of Greg Mortenson and Central Asia Institute* (Apr. 2012) ...................................................................................................................... 5

The Nonprofit Sector in Brief 2019, the Urban Institute ............................................................. 5

The States of Arkansas, Alaska, Georgia, Idaho, Mississippi, Oklahoma, Kansas, Kentucky, Louisiana, Missouri, Ohio, South Carolina, South Dakota, Texas, Utah, and West Virginia, submit this brief as *amici curiae* in support of Plaintiff and in opposition to Defendant's Motion to Dismiss (ECF No. 20).

## INTRODUCTION

State officials must enforce the law, but they must also take care not to become a law unto themselves. Yet that's precisely what has happened here. New York Attorney General Letitia James seeks to dissolve the National Rifle Association of America, the country's foremost Second Amendment advocacy organization. She seeks to do so not because of anything the organization or its members have done. Indeed, the New York AG purports to act in the interest of the NRA's members—the very Americans who trust it to protect their constitutionally enumerated liberties. In other words, supposedly to protect the NRA's members, the New York AG seeks to kill the NRA. It is difficult to fathom how it would serve those members' interests to disband the advocate they support. Dissolving the NRA would leave its members with less of a voice.

The tension between the New York AG's stated justification for dissolving the NRA and the interests of the NRA's members suggests another motive for seeking dissolution. The New York AG campaigned for office on a platform of taking down the NRA by any means possible. And both her campaign rhetoric and statements since taking office leave little doubt that she has targeted the NRA because she disagrees with its political speech and zealous defense of the Second Amendment.

The New York AG now seeks to deliver on her campaign promise. Employing her Office's enforcement authority over nonprofit organizations, she is pursuing an investigation into

1

allegations that the NRA's top executives committed various financial misdeeds against the organization. But consistent with her campaign promises, the New York AG's end goal is not to assist the NRA in rooting out alleged corruption. It is to destroy the country's oldest civil rights organization and silence anyone who disagrees with her unusual view of the Second Amendment. And her weapon of choice is dissolution, a tactic normally reserved for sham organizations and crime fronts.

The New York AG's actions threaten the civil rights of five million members, including the citizens of the *Amici* States. The U.S. Constitution forbids her from taking these actions. While state Attorneys General have broad authority to enforce nonprofit governance laws, that authority must be tempered by the First Amendment's prohibition of infringement of the right to speech and association. The New York AG cannot be allowed to wield the power of her Office to discriminate against the NRA simply because she doesn't like its members' political views, advocacy, and defense of a fundamental constitutional right. She has moved to dismiss the NRA's suit on a variety of grounds, but all are unavailing. The NRA has properly pleaded allegations that the New York AG has violated its First and Fourteenth Amendment rights, and this Court has jurisdiction to hear those claims. Her motion should be denied, and the NRA's suit should move forward.

**ARGUMENT**

I.     **The Second Amendment guarantees an individual right to keep and bear arms.**

Though the New York AG's discriminatory purpose in bringing the dissolution suit against the NRA violates the First Amendment, this case is really about the Second Amendment's protection of an individual's right to keep and bear arms.

That Amendment provides that, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District*

2

*of Columbia v. Heller*, the Supreme Court confirmed that the Second Amendment confers "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). And the Court went on in *McDonald v. City of Chicago* to hold that the right to keep and bear arms is both "fundamental" and "deeply rooted in this Nation's history and tradition." 561 U.S. 742, 768 (2010). That right, moreover, is "fully applicable to the States" through the Fourteenth Amendment. *Id.* at 750.

The New York AG seeks dissolution of the NRA because she doesn't like the Second Amendment and wants to silence an organization—and its members—dedicated to the defense of the Constitution. And her office has actively campaigned to undermine the individual right to keep and bear arms.[1] But despite her best efforts to undermine the civil liberties of millions of law-abiding Americans, the fact remains that the Second Amendment enshrines an individual right to keep and bear arms.

## II. State regulation of nonprofit and charitable organizations is essential to protecting the public.

*Amici* States recognize the important governmental interests in regulating the governance and operations of nonprofit and charitable entities. Many have established statutory frameworks covering those entities[2] and provide their respective Attorney General with enforcement authority as New York has done.[3] Protecting the public from deceptive and fraudulent practices by nonprofit and charitable organizations is a key purpose underlying these laws.

---

[1] *See, e.g.*, Br. of *amici curiae* States of New York et al., *N.Y. State Rifle & Pistol Ass'n v. City of New York*, US Sup. Ct. Case No. 18-280.

[2] *See, e.g.*, Ark. Code Ann. 4-28-101 *et seq.*

[3] *See, e.g.*, Ark. Code Ann. 4-28-416(a)(2) (providing enforcement authority to Attorney General).

Attorneys General and other executive officials play a central role in policing bad behav-

ior via enforcement actions against nonprofit and charitable entities.[4]  These suits can achieve

restitution for victims of fraud and waste, deter unlawful practices by such entities, and in excep-

tional cases, shut down sham entities predicated on unlawful activities. *See Riley v. Nat'l Fed'n*

*of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988) (recognizing state interest in "vigorously en-

forc[ing] its antifraud laws" to prohibit organizations "from obtaining money on false pretenses

or by making false statements").  Notably, the New York AG in the past sued to dissolve a non-

profit corporation that was operating to solicit funds for NAMBLA, a pro-pedophilia outfit and

child-pornography cartel. *See People v. Zymurgy, Inc.*, 233 A.2d 178 (N.Y. App. Div. 1996).

And States use enforcement actions to dissolve sham charities, though such a remedy is drastic

and sought only in the most egregious cases.[5]

"Ultimately, attorneys general hold the power and the commensurate responsibility to de-

termine the course of action best suited to the protection of the public's interest in charity." Bob

Carlson, et al., *Protection and Regulation of Nonprofits and Charitable Assets*, STATE ATTOR-

NEYS GENERAL POWERS AND RESPONSIBILITIES 205 (Nat'l Ass'n of Attorneys Gen. 2013).  As

---

[4] *See, e.g., Rutledge Announces Settlement with Fraudulent Hospice Care Charity*, News Re-
lease, Office of the Arkansas Attorney General (Aug. 1, 2019) (detailing settlement with organi-
zation accused of operating a sham charity soliciting donations ostensibly for end of life care ser-
vices), *available at* https://www.arkansasag.gov/media-center/news-releases/rutledge-announces-
settlement-with-fraudulent-hospice-care-charity/; *Rutledge Reaches Settlement with Children of
Veterans Foundation*, News Release, Office of the Arkansas Attorney General (Sept. 9, 2016)
(detailing settlement with organization accused of soliciting donations to children of American
veterans while instead using donations for the financial gain of the organization's directors),
*available at* https://arkansasag.gov/media-center/news-releases/settlement-with-children-of-
veterans-foundation/.

[5] *See, e.g., Rutledge Settles Claims Against Two Bogus Cancer Charities*, News Release, Of-
fice of the Arkansas Attorney General (Apr. 1, 2016) (multi-state and FTC settlement resulting in
dissolution of two fake cancer charities), *available at* https://arkansasag.gov/media-center/news-
releases/claims-against-two-bogus-cancer-charities/.

4

the charitable and nonprofit sectors continue to grow,[6] States and their attorneys general must continue to use limited resources to protect the public and in so doing must be afforded considerable discretion.  That discretion is particularly important when attorneys general must become involved in investigations regarding high-profile organizations.[7]  Because an attorney general's enforcement powers may sweep broadly, it is important that they be exercised responsibly.

That is particularly true with extraordinary remedies such as involuntary dissolution. Many States' involuntary-dissolution statutes are written broadly, allowing a court to dissolve a nonprofit corporation if it "constitutes a public nuisance"[8] or "violates the laws of [the] state or the rules of any state regulatory board or commission having jurisdiction of any activity of the corporation."[9]  But given that the purpose of enforcement actions involving charities and non-profits is to bring the organization into compliance if possible, discretion must be exercised to reserve dissolution for the worst and irredeemable offenders.

When an organization's primary mission is political advocacy, involuntary dissolution risks the appearance of constitutionally problematic, viewpoint-based targeting.  Perhaps no situ-

---

[6] The Nonprofit Sector in Brief 2019, the Urban Institute, https://nccs.urban.org/publication/nonprofit-sector-brief-2019.

[7] See, e.g., Jennifer Chambers, *Ford Foundation's Work Doesn't End with 'Grand Bargain'*, DETROIT NEWS (Jan. 19, 2015), https://www.detroitnews.com/story/news/local/wayne-county/2015/01/19/ford-foundations-work-end-grand-bargain/21981269/ (describing investigation of Ford Foundation by Michigan AG); *Montana Attorney General's Investigative Report of Greg Mortenson and Central Asia Institute* (Apr. 2012), https://dojmt.gov/wp-content/uploads/2012_0405_FINAL-REPORT-FOR-DISTRIBUTION.pdf (report of investigation by Montana AG into prominent charity); John Schmeltzer, *Kauffman Foundation Cleared of Wrongdoing*, CHI. TRIB. (Mar. 8, 2004), https://www.chicagotribune.com/news/ct-xpm-2004-03-08-0403080210-story.html (Missouri AG investigation regarding Kansas City charitable organization).

[8] Ark. Code Ann. 4-28-222(5).

[9] Ark. Code Ann. 4-28-222(6).

5

ation is riper for potential abuse than when an attorney general investigates and initiates enforcement action against an organization that is a political rival. The stakes are even higher when the extraordinary remedy of involuntary dissolution is sought. Involuntary dissolution ends, once and for all, the public's ability to participate in the dissolved organization's political advocacy. Commitment to scrupulousness is of the upmost importance, lest an Attorney General appear to be engaging in impropriety.[10] And as the American Civil Liberties Union's National Legal Director recently explained, there's no doubt that the New York AG's dissolution action crosses that important line.[11]

## III.    The NRA and its members are entitled to First Amendment protection from the New York AG's discriminatory dissolution action.

The NRA is the country's oldest and one of its most important civil rights organizations. It has consistently fought for Americans' Second Amendment rights via political advocacy, litigation, and legislative efforts.[12] Its five million members include citizens of *Amici* States, and

---

[10] *Compare* Max Brantley, *Clinton Foes Target Clinton Foundation, but Rutledge Office Says There's No Investigation,* ARK. TIMES (Jan. 11, 2016), https://arktimes.com/arkansas-blog/2016/01/11/clinton-foes-target-clinton-foundation-but-rutledge-office-says-theres-no-investigation (Arkansas AG declining to pursue investigation of Clinton Foundation), *with* Colby Hamilton, *Schneiderman: 'Unfair' To Single Out Clinton Foundation for Foreign Donations,* POLITICO (Oct. 19, 2016) (New York AG struggling to explain the State's differential treatment of Clinton Foundation and Trump Foundation).

[11] *See* David Cole, *The NRA Has a Right to Exist,* WALL ST. J. (Aug. 26, 2020), https://www.wsj.com/articles/the-nra-has-a-right-to-exist-11598457143 (describing the state dissolution suit as "unconstitutional government overreach").

[12] *See, e.g.,* Br. of *amicus curiae* NRA, Inc. in Support of Pet., *Rogers v. Grewal,* US Sup. Ct. Case No. 18-824; Br. of *amicus curiae* NRA, Inc. in Support of Pet., *N.Y. State Rifle & Pistol Ass'n v. City of New York,* US Sup. Ct. Case No. 18-280.

the organization has played a central role in ensuring those citizens continue to enjoy their individual constitutional right to bear arms.[13]  But the New York AG calls the NRA a "criminal enterprise"[14] and a "terrorist organization."[15]  These are not the words of a state official scrupulously enforcing nonprofit governance law.  Rather, those words underscore what the New York AG's dissolution case really is: a politically motivated assault on free speech and an effort to destroy both a fundamental constitutional right and a political opponent dedicated to defending that right.  Thankfully, the First Amendment protects the right to advocate for the Second.

### A.  The NRA's political speech is protected by the First Amendment.

The NRA's Second Amendment advocacy is at the heart of First Amendment protection. *See Meyer v. Grant*, 486 U.S. 414, 422 (1988) (describing "interactive communication concerning political change . . . as core political speech") (internal quotation marks omitted).  After all, the right "to petition for a redress of grievances [is] among the most precious of . . . liberties safeguarded by the Bill of Rights." *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967); *see FTC v. Superior Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) (noting the First Amendment right "to lobby . . . officials to enact favorable legislation").  That is because the First Amendment "'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *New York Times*

---

[13] *See, e.g., Alert! Attention: First Time Gun Buyers - NRA Launches Online Gun Safety Courses*, NRA Institute for Legislative Action (Apr. 8, 2020), https://www.nraila.org/articles/20200408/alert-attention-first-time-gun-buyers-nra-launches-online-gun-safety-courses.

[14] *Attorney General Candidate, Public Advocate Letitia James*, OUR TIME PRESS (Sept. 6, 2018), https://www.ourtimepress.com/attorney-general-candidate-public-advocate-letitiajames/.

[15] Teddy Grant, *Letitia 'Tish' James on Becoming New York's Next Attorney General*, EBONY (Oct. 31, 2018), https://www.ebony.com/news/letitia-tish-james-on-becoming-new-yorksnext-attorney-general/.

*Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United* States, 354 U.S. 476, 484 (1957)).

When government officials, like the New York AG in this case, target organizations for their members' political viewpoints, they subvert the very freedoms they are sworn to protect. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 349 (2010) ("If the First Amendment has any force, it prohibits [governments] from fining or jailing citizens, or associations of citizens, for simply engaging in political speech."). That is especially true here, as New York's invasive firearm laws make it a frequent target for lawsuits brought by organizations such as the NRA and their members. *See Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against."). If ever there were a time that an organization required First Amendment protection from a government entity seeking to destroy it, this is it.

**B.      The NRA has adequately alleged that the New York AG is violating the constitutional rights of the organization and its members.**

The New York AG moves to dismiss for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And "all reasonable inferences" must be drawn "in the plaintiff's favor." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d. Cir. 2008) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Accepting

the factual allegations in the Amended Complaint as true, the NRA has adequately pleaded its claims under the U.S. Constitution.[16]

### 1.    First Amendment Retaliation

The NRA's First Amendment retaliation claim easily passes the motion-to-dismiss threshold. "To plead a First Amendment retaliation claim a plaintiff must show: (1) [it] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [its] exercise of that right; and (3) the defendant's actions caused [it] some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). As explained above, the NRA's political advocacy is core First Amendment activity, so the first prong is satisfied. The NRA has adequately pleaded that this activity was the cause of the New York AG pursuing the dissolution action. *See* Am. Compl. ¶ 56 ("James's actions as NYAG . . . were . . . undertaken directly in response to and substantially motivated by NRA's political speech regarding the right to keep and bear arms. James has acted with the intent to obstruct, chill, deter, and retaliate against the NRA's core political speech . . . ."); *id.* ¶ 57 ("James chose to exercise her discretion to harm the NRA based on the content of the NRA's speech regarding the Second Amendment.").

The NRA has pleaded facts sufficient to render these allegations plausible. The statements made by the New York AG are nothing short of startling. The New York AG's promise to "take down the NRA" if elected, coupled with her description of the NRA's advocacy as "poisonous" and "deadly propaganda,"[17] makes it clear that the NRA's message is the impetus for the

---

[16] *Amici* States do not address the NRA's claims under New York law.

[17] *See* Jon Campbell, *NY AG Letitia James Called the NRA a 'Terrorist Organization.' Will It Hurt Her Case?*, USA TODAY (Aug. 19, 2020), https://www.usatoday.com/story/news/politics/2020/08/19/nra-lawsuit-ny-ag-letitia-james-pastcomments/ 5606437002/.

New York AG's dissolution request. And her statement that she would be investigating not simply whether the NRA was in compliance with New York nonprofit law but the NRA's very "legitimacy as a not-for-profit corporation" shows that her ultimate goal was always dissolution, because the goal was to punish the NRA for its speech, not pursue a legitimate investigation. Am. Compl. ¶ 16.

The NRA has also adequately pleaded harm attributable to the New York AG's discriminatory action. It alleges that the New York AG's discriminatory "investigation has cost the NRA "millions of dollars in unnecessary expenses." Am Compl. ¶ 52. Moreover, it alleges that the investigation has caused the NRA reputational harm. And it's easy to see why that would be true, given that the remedy of dissolution is historically reserved for sham organizations or those that are steeped in criminal activity. The New York AG has harmed the NRA by lumping it together with such organizations. This harm is cognizable, and the NRA's retaliation claim easily survives Defendant's Motion to Dismiss.

Finally, it is telling that a companion lawsuit against the NRA and the NRA Foundation brought by the District of Columbia AG on the same day as New York's action does not seek dissolution. *District of Columbia v. NRA Found.*, No. 2020-CA-003454 (D.C. Sup. Ct. Aug. 6, 2020). Indeed, the District of Columbia AG's failure to seek so draconian a remedy underscores what's all too obvious: there's no plausible case for dissolution and the New York AG's dissolution case is really about silencing anyone who disagrees with her view of the Second Amendment.

### 2.   *Associational rights of NRA members*

The NRA's retaliation claim based on its members' exercise of associational rights similarly survives a motion to dismiss. The NRA's members—including citizens of the *Amici* States—certainly have a First Amendment right to associate with the organization. The New

York AG has specifically sought dissolution of the organization itself and, if she were successful, the entity through which the NRA membership associates would cease to exist, stifling the members' Second Amendment advocacy. *See* Am. Compl. ¶ 31; *see id.* ¶ 80 ("James's intentional actions are designed to punish the NRA and its members for associating to engage in Second Amendment advocacy and to chill NRA members' future exercise of such freedom of association . . . .").

The NRA is the foremost organization defending the constitutional right of individuals to keep and bear arms. It cannot simply be replaced if it is dissolved. And consequently, the New York AG cannot possibly dispute that dissolving the organization will undermine the ability of NRA members to organize and advocate for the Second Amendment. Thus, the NRA and its members' retaliation claim based on association survives Defendant's Motion to Dismiss.

###### 3.    *Equal Protection*

Finally, the NRA's equal-protection claim must move forward. Laws that burden fundamental rights trigger heightened scrutiny under the Equal Protection Clause. *See Harper v. Va. State Bd. of Elections,* 383 U.S. 663, 670 (1966). The Fourteenth Amendment prohibits discriminatory treatment based on an impermissible factor such as protected expression under the First Amendment. *See Meyer,* 486 U.S. at 422. The NRA has sufficiently pleaded that the New York AG singled out the NRA—and its members who are citizens of the *Amici* States—for disparate treatment apart from all other non-sham nonprofit organization. Am. Compl. ¶ 95 ("James's decision to seek dissolution on the sole basis of executive misconduct for the very first time against the NRA despite more than two decades of non-enforcement against similarly situated non-profits demonstrates selective enforcement of the not-for-profit law."). And the NRA has plausibly alleged that the New York AG's motivation for doing so was the NRA's political speech. *Id.* ("[T]his selective enforcement has occurred on the impermissible basis of the NRA's disfavored

11

political speech."). Whatever standard of review applies, the New York AG's pretextual dissolu-tion suit fails. *See Healy v. James*, 408 U.S. 169, 185-86 (1972) (noting that the Supreme Court "has consistently disapproved governmental action . . . denying rights and privileges solely be-cause of a citizen's association with an" organization that is "unpopular" with government offi-cials). The NRA's equal-protection claim is not susceptible to dismissal.

*     *     *

The facts alleged in the NRA's complaint are disturbing and, if true, show that the New York AG has violated the constitutional rights of the NRA and its members, targeting them for their political beliefs. Because those allegations are assumed to be true at this stage of the case, the New York AG's motion to dismiss must be denied.

## IV.   This Court is the proper forum for the NRA to seek relief.

The New York AG suggests that this Court may not review her politically-motivated de-cision to target the NRA and its members. But this Court undisputedly has jurisdiction over the NRA's claims, and the New York AG's arguments regarding immunity and abstention are una-vailing.

*First*, the New York AG argues that she is entitled to Eleventh Amendment immunity. While suits against States are generally barred under the Eleventh Amendment, under the *Ex parte Young* doctrine "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Here, the NRA seeks prospective injunctive relief preventing the New York AG "from further pursuing its dissolution causes of action." Am. Compl. at 41. And she cannot rely on the principles discussed in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) to avoid *Ex parte Young* in this case, because the NRA does not claim simply that

12

she has violated state law but that her exercise of her state-law powers violates the U.S. Constitution. Thus, the New York AG is not immune from suit.

*Second*, she claims that this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). But "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Supreme Court has made clear that only three "exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989). Those are "ongoing state criminal prosecution," "certain civil enforcement proceedings," and "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.

The New York AG wrongly claims that this case fits within the second exception concerning civil enforcement proceedings. The criteria for divesting a federal court of jurisdiction under this exception are stringent: there must be "(1) []a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). There is now a "pending" state proceeding, though the NRA alleges that it was not pending at the time this lawsuit was filed. Am. Compl. at 4 n.8. But the type of civil enforcement proceedings subject to *Younger* abstention are of a different character than the state dissolution suit, traditionally involving proceedings "akin to a criminal prosecution" that "are characteristically initiated to sanction . . . the party challenging the state action[] for some wrongful act." *Sprint*, 571 U.S. at 79 (internal quotation marks omitted). Here, the New York AG is pursuing the state dissolution action "based solely on allegations of misconduct by four individual executives" of the NRA, Am. Compl. at 4,

13

and those allegations if true show that the NRA and its members were victims of that miscon-

duct, *see* Am. Compl. ¶ 37 (explaining that in all recent cases alleging executive self-dealing by

nonprofit executives, the New York AG "considered the non-profit a victim and engaged in col-

laborative discussions with the organizations to implement measures designed to tighten internal

controls," and that the state dissolution action is the first instance of the New York AG instead

seeking to dissolve a nonprofit).

That is, the pending state proceeding to which the New York AG points seeks to sanction

allegedly illegal conduct by certain NRA executives through punishing the NRA and by exten-

sion its members, who also happen to be *the victims* of the alleged conduct in question. This

lawsuit seeks to protect their constitutional rights—not to interfere with the New York AG's in-

vestigation of any alleged wrongdoing. *Younger* does not allow this Court to abstain from hear-

ing the NRA's claims.

Even if the state dissolution suit met the criteria for *Younger* abstention, "a federal court

may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any

other unusual circumstances that would call for equitable relief.'" *Diamond "D" Constr. Corp.

v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). This includes

proceedings "brought to retaliate for or to deter constitutionality protected conduct." *Id.* (quoting

*Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994)). This is exactly what the NRA alleges

here. Am. Compl. ¶ 56 (alleging that the NY AG "has acted with the intent to obstruct, chill, de-

ter, and retaliate against the NRA's core political speech"). And "the subjective motivation of

the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry."

*Diamond "D" Constr.*, 282 F.3d at 198. The NRA has adequately alleged facts showing that

*Younger* abstention is improper here.

14

*Third*, the New York AG argues that this Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "[T]he Supreme Court [has] cautioned the lower federal courts to limit their invocation of *Burdford* abstention . . . ." *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998). It is only appropriate "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service*, 491 U.S. at 361. As to the first factor, there are no questions of state law implicated by the NRA's federal constitutional claims against the New York AG. Rather, the issue is whether the state dissolution suit is motivated by a retaliatory desire to punish the NRA and its members for constitutionally protected activity.

As to the second factor, the New York AG simply asserts that her Office's regulatory authority over nonprofits and charities is enforcement of a "comprehensive regulatory scheme" warranting abstention. Mot. to Dismiss at 17. But the Second Circuit has clarified that courts focus on three factors when assessing this: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch*, 159 F.3d at 697. Applying these three factors, abstention is improper.

As to the first factor, New York's regulatory scheme surrounding involuntary dissolution, like that of many other States, is especially broad in nature. *See* Am. Compl. ¶ 34 (describing the broad statutory authority to initiate dissolution actions); *see supra* notes 8-9 and accompanying text (discussing state dissolution statutes). And even if that statute were more specific in nature, the Second Circuit has clarified that this factor "focuses more on the extent to which the federal

15

claim requires the federal court to *meddle* in a complex state scheme." *Hachamovitch*, 159 F.3d at 697. This Court need not wade into the minutiae of New York nonprofit law to determine that the New York AG's motive in seeking dissolution of the NRA was constitutionally impermissible. The second factor therefore also weighs against abstention, as the NRA's claims "would not put the federal court into the business of interpreting the state regulatory regime . . . ." *Id.*. And though New York, like all States, has a substantial concern in the regulation of nonprofit entities, abstention "is not required even in cases where the state has a substantial interest if the state's regulations"—or, as here, discriminatory enforcement of them—"violate the federal constitution." *Id.* The NRA's complaint alleges just that, and *Burford* abstention is therefore inappropriate.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

Clyde "Ed" Sniffen, Jr.
*Alaska Acting Attorney General*
Christopher M. Carr
*Georgia Attorney General*
Lawrence G. Wasden
*Idaho Attorney General*
Lynn Fitch
*Mississippi Attorney General*
Mike Hunter
*Oklahoma Attorney General*
Derek Schmidt
*Kansas Attorney General*
Daniel Cameron
*Kentucky Attorney General*
Jeff Landry
*Louisiana Attorney General*
Eric Schmitt
*Missouri Attorney General*
Dave Yost
*Ohio Attorney General*
Alan Wilson
*South Carolina Attorney General*
Jason Ravnsborg
*South Dakota Attorney General*
Ken Paxton
*Texas Attorney General*
Sean D. Reyes
*Utah Attorney General*
Patrick Morrisey
*West Virginia Attorney General*

Steven E. Losquadro
STEVEN E. LOSQUADRO, P.C.
649 Route 25A, Suite #4
Rocky Point, New York 11778
(631) 744-9070
losquadrolaw@aol.com

Leslie Rutledge
*Arkansas Attorney General*
Nicholas J. Bronni
*Solicitor General*
Vincent M. Wagner
*Deputy Solicitor General*
Dylan L. Jacobs
*Assistant Solicitor General*
OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
dylan.jacobs@arkansasag.gov
*Counsel for Amici Curiae*

17