## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

NATIONAL RIFLE ASSOCIATION OF
AMERICA,

      Plaintiff,

v.

LETITIA JAMES, in her individual and
official capacity,

      Defendant.

§
§
§
§
§
§
§
§
§
§
§
§

CASE NO.  1:20-CV-00889 (MAD)(TWD)

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

William A. Brewer III
Sarah B. Rogers
**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR PLAINTIFF
THE NATIONAL RIFLE ASSOCIATION**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................I

TABLE OF AUTHORITIES .......................................................................................................II

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .................................................................................................................................4

    A.    The Eleventh Amendment Does Not Bar This Action. ...........................................4

    B.    Abstention is Neither Required Nor Appropriate. ...................................................5

    C.    The Amended Complaint States a Claim Under State Constitutional Law. ...........11

    D.    The Amended Complaint States a First Amendment Claim.................................12

    E.    The Amended Complaint States an Equal Protection Claim. ...............................14

    F.    The NRA Has Standing to Assert First Amendment Claims on Behalf of Its Members. ............................................................................................................16

    G.    James' Challenge to the As-Applied Constitutionality of New York's Not-for-Profit Corporation Law is Premature.................................................................18

    H.    James Has No Qualified or Absolute Immunity from Liability. ...........................19

CONCLUSION............................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*303 West 42nd St. v. Klein*, 46 N.Y.2d 686 (1979).................................................................. 22

*Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367 (W.D.N.Y. 2009) ..................................... 5

*Alden v Gambino*, 53 Misc.3d 1204(A) (City Ct. Poughkeepsie Sept. 29, 2016) ......................... 8

*Allen v. Antal*, 665 F. App'x 9 (2d Cir. 2016) ............................................................... 11

*Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988)............................. 10

*Alwan v. City of New York*, 311 F. Supp. 3d 570 (E.D.N.Y. 2018)................................... 12

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84 (2d Cir. 1988) ..................... 9

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................ 21

*Anilao v. Spota*, 2018 WL 6190519 (E.D.N.Y. Nov. 28, 2018) ............................... 19, 20

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y. 2014) ................................................. 5

*Baggett v. Bullitt*, 377 U.S. 360 (1964)......................................................................... 11

*Balakrishnan v. Kusel*, 2009 WL 1291755 (E.D.N.Y. May 8, 2009)........................... 21

*Bernstein v. City of N.Y.*, 2007 WL 1573910 (S.D.N.Y. May 24, 2007).................... 21

*Bertuglia v. City of N.Y.,* 839 F. Supp. 2d 703 (S.D.N.Y. 2012)................................. 20

*Bery v. City of New York*, 97 F.3d 689 (2d Cir.1996)..................................................... 7

*Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.,*
    448 F.3d 138 (2d Cir. 2006)................................................................................ 17

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)........................................................ passim

*Burns v. Citarella*, 443 F. Supp. 2d 464 (S.D.N.Y. 2006)........................................... 22

*Bush v. City of Utica*, 558 F. App'x 131 (2d Cir. 2014) ........................................ 20, 22

*Bush v. City of Utica, N.Y.*, 558 F. App'x 131 (2d Cir. 2014) ................................... 22

*Carpenter v. Comm'r, IRS*, 2016 WL 7238792 (D. Conn. Dec. 14, 2016).................. 20

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017)................................................................. 17

*Children First Found., Inc. v. Martinez*, 2005 WL 600283 (N.D.N.Y. Mar. 14, 2005).............. 21

*Chinn v. City University of New York School of Law at Queens College*,
    963 F. Supp. 218 (S.D.N.Y. 1997)........................................................... 5

*Christa McAuliffe Intermediate School PTO, Inc.. v. de Blasio*,
    364 F. Supp. 3d 253, 271 (S.D.N.Y. 2019)................................................. 17

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)........................ 9

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ............................................... 7

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)............................................... 21

*DeMartino v. New York State Dep't of Labor*, 167 F. Supp.3d 342 (E.D.N.Y. 2016)................... 8

*DeMartino v. New York State Dep't of* Labor, 712 F. App'x 24 (2d Cir. 2017). ............................ 8

*Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) ...................................... 7

*Dorsett v. City of Nassau*, 732 F.3d 157 (2d Cir. 2013) ................................................. 13

*Dube v. State Univ. of New York*, 900 F.2d 587 (2d Cir. 1990)........................................... 5

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................................................................... 6

*England v. Louisiana State Bd. Of Medical Examiners*, 375 U.S. 411 (1964)............................... 6

*Ex parte Young,* 209 U.S. 123 (1908)................................................................... 4, 5

*Felmine v. N.Y.C.*, 2012 WL 1999863 (E.D.N.Y. June 4, 2012).................................. 11

*Fla. Paraplegic Ass'n v. Martinez*, 734 F. Supp. 997 (S.D. Fla. 1990))....................................... 18

*Garcia v. Does*, 779 F.3d 84 (2d Cir. 2015) .......................................................... 20

*Gubitosi v. Kapica*, 895 F. Supp. 58 (S.D.N.Y. 1995) .................................................. 7

*Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir.1998) ............................................. 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................................... 19

*Harman v. Forssenius*, 380 U.S. 528 (1965) ......................................................... 11

*Harris v. Pernsley*, 755 F.2d 338 (3d. Cir. 1984) ........................................................ 10

*Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998) .......................................................... 21

*Hickey v. City of N.Y.*, 2002 WL 1974058 (S.D.N.Y. Aug. 26, 2002) ........................... 20

*Hill v. City of New York*, 45 F.3d 653 (2d Cir.1995) ..................................................... 19

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977)....................... 17

*Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997) .......................................... 5

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................... 21

*Immuno A.G. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991) ............................................. 12

*Jolly v. Coughlin*, 76 F.3d 468 (2d. Cir. 1996) ............................................................... 6

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ......................................................... 22, 23

*Kelly v. Santiago*, 2019 WL 3574631 (D. Conn. Aug. 6, 2019)...................................... 6

*Kentucky v. Graham,* 473 U.S. 159 (1985)..................................................................... 4

*Laird v. Tatum*, 408 U.S. 1 (1972).............................................................................. 14

*Leibert v. Clapp*, 13 N.Y.2d 313 (1963)......................................................................... 2

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988).......................................................... 7

*LILCO v. Cuomo*, 666 F. Supp. 370 (N.D.N.Y. 1987) ................................................. 10

*Markel v. Blum,* 509 F. Supp. 942 (N.D.N.Y.1981) ..................................................... 10

*Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001) ................................................ 11

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ....................................................... 20

*McNeese v.Bd. of Ed. For Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668 (1963) .......... 11

*Morgan v. Maher*, 50 Misc.2d 642 (Sup. Ct. Nassau Cty. 1969) ................................... 8

*Mozzochi v. Borden*, 959 F.2d 1174 (2d Cir. 1992)..................................................... 13

*Munoz v. City of N.Y.*, 2008 WL 464236 (S.D.N.Y. Feb. 20, 2008) ............................ 20

*N.Y. State Citizens' Coal. for Children v. Velez*, 629 F. App'x 92 (2d Cir. 2015) ...................... 16

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) .......................................... 3

*Napolitano v. Flynn*, 949 F.2d 617 (2d Cir. 1991) ...................................................... 22

*New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350 (1989).................................... 10

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) .............................................................. 16

*Orozco v. Sobol*, 703 F. Supp. 1113 (S.D.N.Y.1989).................................................... 11

*Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012)........................................................ 20

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................. 19

*People v. B.C. Assocs., Inc.*, 22 Misc.2d 43 (N.Y. Sup. Ct. 1959) ................................. 10

*People v. Oliver Schools, Inc.*, 206 A.D.2d 143 (4 Dept 1994)......................................... 10

*State of New York v. Saksniit.*, 69 Misc.2d 554 (Sup. Ct. N.Y. Cnty. 1972) ................................ 10

*People v. Therapeutic Hypnosis, Inc*., 83 Misc.2d 1068 (Sup. Ct. N.Y. Cnty. 1975) ................. 10

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122 (2d Cir. 1995).............. 9

*Quackenbush v. Allstate Ins. Co*., 517 U.S. 706 (1996) ........................................... 3, 9

*Rothman v. City of New York*, 2020 WL 2139328 (S.D.N.Y. May 5, 2020)................................ 23

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................... 21

*Schlagler v. Phillips*, 166 F.3d 439 (2d Cir. 1999).......................................................... 7

*Sprint Commn's, Inc. v. Jacobs*, 571 U.S. 69 (2013)...................................................... 5

*Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015) ........................... 7

*State Empl's v. Rowland*, 494 F.3d 71 (2d Cir. 2007) ..................................................... 5

*State of New York v. Cortelle Corp.*, 38 N.Y.2d 83 (2 Dep't 1975) ........................................ 10

*Torres v. Faxton St. Lukes Healthcare*, 2017 WL 11317906 (N.D.N.Y. Jan. 26, 2017)................ 20

*Tunick v. Safir*, 209 F.3d 67 (2d Cir. 2000) ................................................................. 6

*United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588 (2d Cir. 1989) ................................. 6

*United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................. 18

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002) ...................... 5

*Walker v. Mendoza*, 2000 WL 915070 (E.D.N.Y. June 27, 2000) ................................. 21

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................. 19

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) .......................................... 4

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ................................................................ 22

*Younger v. Harris*, 401 U.S. 37 (1971) .............................................................. 1, 6

## RULES

N.Y. CPLR 3022 ........................................................................................................ 8

## OTHER AUTHORITIES

Charles A. Wright, Arthur R. Miller and Mary Kane, FEDERAL PRACTICE AND PROCEDURE (2d ed. 1995) ...................................................................................................... 7

Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv. L. Rev. 1352 (1970) ........................... 6

Plaintiff the National Rifle Association of America (the "NRA" or "Association") respectfully submits this memorandum of law in opposition to the motion filed by the New York State Office of the Attorney General (the "NYAG") on behalf of Defendant Letitia James ("James") to dismiss the Amended Complaint pursuant to the Eleventh Amendment, *Younger* and *Burford* abstention doctrines and Rule 12(b)(6) (the "Motion"), as follows.

## PRELIMINARY STATEMENT

Defendant James campaigned for office on a promise that, if elected, she would leverage the oversight power of the NYAG to shut down the NRA. Her animus was boastful and undisguised, and included bizarre accusations of terrorism[1] and vows to prosecute NRA donors and banks.[2] When James was elected, she delivered on her threat to sue to dissolve the NRA. And she did so with unprecedented fanfare, in a press conference teased as the "major national announcement" it was.[3] Since then, James has been excoriated by civil liberties advocates, and now confronts the constitutional claims that her abuse of power predictably provoked. In response, she urges this Court to turn away—there is nothing to see here, James insists, except the anodyne

---

[1] *See* Jon Campbell, *NY AG Letitia James Called the NRA a 'Terrorist Organization.' Will It Hurt Her Case?*, USA TODAY (Aug. 19, 2020), https://www.usatoday.com/story/news/politics/2020/08/19/nra-lawsuit-ny-ag-letitia-james-pastcomments/5606437002/; *see also* Teddy Grant, *Letitia 'Tish' James on Becoming New York's Next Attorney General*, EBONY (Oct. 31, 2018), https://www.ebony.com/news/letitia-tish-james-on-becoming-new-yorksnext- attorney-general/.

[2] *See Attorney General Candidate, Public Advocate Letitia James*, OUR TIME PRESS (Sept. 6, 2018), http://www.ourtimepress.com/attorney-general-candidate-public-advocate-letitia-james/ ("we need to again take on the NRA, which holds itself out as a charitable organization. But, in fact, they are not. They are nothing more than a criminal enterprise. We are waiting to take on all of the banks that finance them, their investors.").

[3] *See* Transcript of James' August 6, 2020 press conference, *available at* https://www.rev.com/blog/transcripts/ny-attorney-general-letitia-james-sues-nra-press-conference-august-6.

enforcement of state not-for-profit law. As the ACLU and more than a dozen *Amici* States agree, James is wrong: fundamental constitutional rights are at stake in this case. This Court can, and should, protect them.

Immediately after taking office, James commenced a sweeping, invasive investigation in an attempt to muster a legal justification to dissolve the NRA. She did not find one. Instead, the "600 paragraphs of detailed factual allegations" which the Motion brandishes consist, at best, of self-dealing accusations against individual employees and vendors, many of whom were fired by the NRA absent any action by James. Even if James' allegations were true (they are riddled with falsities), they would amount to the sort of executive misconduct historically resolved through actions against individuals, or remedial reforms adopted through an entity's Board.[4] Instead, James seeks to impose a corporate death sentence.[5] James insists that the factual merits of her accusations against the NRA, and the legal merits of her proposed dissolution remedy, be decided in state court.[6] But the NRA has meritorious constitutional claims, the dismissal of which could radically alter how states regulate non-profits engaged in political speech. The NRA's claims were filed first, are adequately alleged, and deserve a hearing. Although James insists that she should not have to answer for her blatant violations of federal law in federal court, none of her arguments are availing.

*First*, the NRA has a clear right to sue New York State and state officials in federal court for redress of federal constitutional wrongs, in addition to ancillary damages claims. Eleventh

---

[4] James made no demand on the NRA's 76-member Board, despite purporting to sue derivatively. *See* Declaration of Sarah B. Rogers ("Rogers Decl.") ¶ 4.

[5] Tellingly, the Motion cannot adduce any precedent for such an action; groping for one, it relies on a 57-year-old dissolution case by a minority stockholder alleging an abusive "freeze out." *See* Motion at 25 (citing *Leibert v. Clapp*, 13 N.Y.2d 313 (1963)).

[6] Motion at 8, 23, 33.

Amendment immunity from suits in equity only applies when damages are sought from an individual in her official capacity. The NRA's damages claims, however, are pleaded against James in her personal capacity.

*Second*, the *Younger* and *Burford* abstention doctrines are "rarely"[7] invoked exceptions to the requirement that federal courts exercise jurisdiction over federal lawsuits like this one—and cannot be invoked here. James' hostilities against the NRA in New York represent the exact archetype of retaliatory, animus-driven state action that precludes abstention under the *Younger* doctrine.[8] Moreover, this case fails to satisfy *Younger*'s "pending action" requirement and does not present complex questions of state law warranting *Burford* abstention.

*Third*, state constitutional claims seeking injunctive relief are properly heard alongside Section 1983 actions.

*Fourth*, the NRA states claims under both the First and Fourteenth Amendments. James' dissolution suit overtly aims to suppress and punish the NRA's speech. The remedy it seeks is totally unwarranted by the conduct alleged, and vastly outstrips the state's treatment of any comparator entities. Moreover, James' violations of NRA members' associational rights are even more severe than those inflicted in *NAACP v. Alabama*.[9] As the numerous commentators and *amici* have emphasized, there is "no doubt" that James' hostilities against the NRA violate the United States Constitution.

---

[7] *See e.g., Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

[8] *See* discussion *infra* at Section B.

[9] *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459–460 (1958); *see also* discussion *infra* at Section F.

*Fifth*, the NRA's First Amendment claims are squarely aligned with those of its members; demanding that each member bring an individual lawsuit would be needlessly duplicative and burdensome. Thus, the NRA's associational standing under Second Circuit law is clear.

*Sixth*, James cannot defeat the NRA's as-applied challenge to New York's weaponized enforcement of its Not-for-Profit Corporation Law by insisting conclusorily at the motion-to-dismiss stage that her conduct is "unrelated to the suppression of free expression."[10] Courts have held repeatedly that the underlying motives, and potential chilling effects, of conduct like James' constitute factual issues for discovery and trial. The NRA looks forward to discovery and trial on these issues in this case.

*Sixth*, because James' actions violated known constitutional rights, her absolute-immunity arguments fail. Qualified immunity, meanwhile, is a fact-specific inquiry not appropriately resolved at this preliminary stage.

For the foregoing reasons, the Motion should be denied in its entirety.

## **ARGUMENT**

### A.    **The Eleventh Amendment Does Not Bar This Action.**

"A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"[11] As such, under the *Ex parte Young* exception, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for

---

[10] Motion at 30-31.

[11] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and *Ex parte Young*, 209 U.S. 123, 159-160 (1908).

prospective, injunctive relief from violations of federal law."[12] "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[13] Here, the NRA's seeks relief for ongoing violations of federal law. James argues that she is immune from the NRA's related claims against her for damages because the Eleventh Amendment to the United States Constitution "bars a suit in law or equity in federal court against a State absent the State's consent to such a suit or congressional abrogation of immunity."[14] But the NRA does not seek damages from "the State" but rather from James in her personal capacity. Where damages are sought from an individual, the Eleventh Amendment does not bar suits in equity even where the alleged wrongs were committed under color of state law.[15]

## B.    Abstention is Neither Required Nor Appropriate.

Federal courts have a "virtually unflagging" obligation to hear cases within their jurisdiction.[16] As the Second Circuit has held, "[a]bstention is the exception, exercise of

---

[12] *See State Empl's v. Rowland*, 494 F.3d 71 (2d Cir. 2007) (holding that an injunction against the former Governor of the State of Connecticut and former Secretary of the Office of Policy & Management of the State of Connecticut prohibiting retaliation was not barred by sovereign immunity) (quoting *Ex parte Young*, 209 U.S. 123 (1908)); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) ("a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

[13] *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

[14] Motion at 12, citing *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014).

[15] *See, e.g., Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367 (W.D.N.Y. 2009); *Chinn v. City University of New York School of Law at Queens College*, 963 F. Supp. 218 (S.D.N.Y. 1997).

[16] *Sprint Comm'n, Inc. v. Jacobs*, 571 U.S. 69 (2013).

jurisdiction is the rule."[17] Here, the NRA raises federal constitutional claims (and, as discussed at Section C, *infra*, related state constitutional claims) properly before this Court. Where there are allegations that a wrong was committed under color of state law, there is "an inherent potential for bias" in the state court.[18] Moreover, judicial review of allegations involving activities that are unpopular locally (like the NRA's Second Amendment stance is in New York) is best conducted by life-tenure federal judges whose jobs are not subject to parochial pressures.[19] Yet James asks this Court to invoke either or both of two narrow, specialized doctrines, *Younger* and *Burford*[20], so that she may escape redress in federal court for her federal constitutional transgressions. Neither *Younger* nor *Buford* abstention applies here.

As James herself admits, *Younger* abstention from enjoining state civil proceedings is only appropriate *absent extraordinary circumstances* where the risk of irreparable injury is "both great and immediate."[21] Unfortunately, those exact extraordinary circumstances are present here. A violation of a litigant's First Amendment rights inflicts presumptive irreparable harm.[22] Therefore,

---

[17] *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 593 (2d Cir. 1989).

[18] *See* Chevigny, Section 1983 Jurisdiction: A Reply, 83 HARV. L. REV. 1352, 1358 (1970).

[19] *See England v. Louisiana State Bd. Of Medical Examiners*, 375 U.S. 411 (1964) (Douglas, J., concurring).

[20] *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[21] Motion at 14; *Younger v. Harris*, 401 U.S. 37, 45-46 (1971).

[22] *See e.g. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d. Cir. 1996) (stating that there is a "presumption of irreparable injury that flows from a violation of constitutional rights" and that "it is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm.") (emphasis original); *Kelly v. Santiago*, 2019 WL 3574631, at *14 (D. Conn. Aug. 6, 2019) (finding that the plaintiff "sufficiently alleged plausible claims against the defendants for First Amendment and Fourteenth Amendment rights, which is sufficient to satisfy a finding of irreparable harm."); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000) ("Because violations of First Amendment rights are presumed irreparable […] the very nature of [plaintiff's] allegations satisfies the requirement that he show

*Younger* abstention is inappropriate where, as here, the state proceeding was brought to retaliate against, or deter, constitutionally protected speech. "[A] refusal to abstain is . . . justified where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass. In such cases, a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the Younger doctrine."[23] "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."[24] "If the facts show that the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted, the exception should apply and abstention may be improper."[25]

Here, the NRA alleges facts sufficient to make the showing necessary to invoke the exception. The NRA has alleged (i) that James detested, and campaigned on a promise to silence,

---

irreparable injury.") (quoting *Elrod*, 427 U.S. at 373 and *Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir.1996)) (internal quotation marks omitted); 11A Charles A. Wright, Arthur R. Miller and Mary Kane, FEDERAL PRACTICE AND PROCEDURE, § 2948.1 at 161 (2d ed. 1995) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

[23] *See Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994) (citations omitted); *see also Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 270 (N.D.N.Y. 2015) (A proceeding that falls under *Younger* may still move forward if the federal plaintiff shows "that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.") (internal citations omitted); *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988) (finding that the *Younger* abstention exception applies because prosecution was brought in retaliation for exercise of First Amendment rights).

[24] *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002).

[25] *See Schlager v. Phillips*, 166 F.3d 439, 443 (2d Cir. 1999); *see also Gubitosi v. Kapica*, 895 F. Supp. 58, 61–62 (S.D.N.Y. 1995) (*Younger* abstention was not appropriate in police officer's § 1983 action alleging that defendants initiated a state proceeding to retaliate against her First Amendment rights).

the NRA's Second Amendment advocacy (which she characterized as "deadly propaganda");[26] (ii) upon taking office as Attorney General, James commenced a sweeping, retaliatory investigation;[27] and (iii) the culmination of these attacks in a draconian, broadly decried dissolution lawsuit is a direct result of James' unconstitutional animus.[28] Simply put, if any entity other than a high-profile political enemy were subject to self-dealing by executives or vendors, the state would have sought to impose reforms—not demand that a successful, century-old advocacy group be destroyed. Moreover, the elements of *Younger* abstention are not met here. The *Younger* abstention doctrine only mandates that federal courts refrain from enjoining state criminal and certain civil state enforcement proceedings when (i) there is an ongoing state proceeding; (ii) an important state interest is implicated; and (iii) the plaintiff has a state court avenue open for review of constitutional claims.[29] In this case there was not an ongoing state proceeding. As James herself admits, her initial complaint was defective, lacking the mandatory verification. New York State law permits a defendant in that circumstance to treat the pleading as a nullity,[30] which the NRA timely elected to do.[31] Under New York law, unverified pleadings are also properly stricken.[32] James did not file an amended complaint until August 10, 2020,[33] meaning her action is deemed

---

[26] *See* Am. Compl. ¶¶ 29-30, 41-42.

[27] *See id*. ¶ 56.

[28] *See id.* ¶ 57.

[29] *DeMartino v. New York State Dep't of Labor*, 167 F. Supp.3d 342, 354 (E.D.N.Y. 2016), *aff'd* in part, 712 F. App'x 24 (2d Cir. 2017).

[30] N.Y. CPLR 3022.

[31] *See State of NY v. NRA, et al*., Index No. 451625/2020 (Dkt. No. 10).

[32] *See Morgan v. Maher*, 60 Misc.2d 642 (Sup. Ct. Nassau Cnty. 1969); *see also Alden v Gambino*, 53 Misc.3d 1204(A) (City Ct. Poughkeepsie Sept. 29, 2016) (acknowledging that striking a defective complaint is proper but declining to do so where defendant did not act with due diligence and seek a verified complaint in writing).

[33] *See State of NY v. NRA, et al*., Index No. 451625 (Dkt. No. 11).

filed *after* the NRA commenced this lawsuit. Because the *Younger* elements are not met and this case fits within an established exception to *Younger*, abstention is inappropriate.

Similarly, abstention is neither required nor warranted under the *Burford* doctrine. Deciding whether to abstain under *Burford* requires a court to balance "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem."[34] "This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'"[35] James argues that *Burford* should apply here to prevent a federal court from "interfering with state efforts … in an area of comprehensive regulation or administration," in this case New York's not-for-profit law.[36] But that discretion is only appropriate when the "comprehensive regulation or administration" in question is of a complex technical nature more properly within the purview of experienced regulators rather than a federal court. In *Burford*, for example, the federal court was being asked whether the Texas Railroad Commission had properly applied Texas's complex oil and gas conservation regulations. Where the subject matter at issue does not involve "resolution of unclear state law" or a "complex state regulatory scheme," abstention "is unwarranted."[37] New York's non-profit corporation law and in

---

[34] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

[35] *Id.* (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

[36] Motion at 17, citing *Am. Disposal Serv's, Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir.1988).

[37] *See Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d Cir. 1995) ("The straightforward statute and regulations invoked here have the comparatively modest goals of ensuring against waste, and requiring districts to prepare plans guiding the provision of social services. If these statutes indeed amount to a "scheme" as envisioned under *Burford,* it does not rise to the requisite degree of complexity" and "[a]s to the second prong, the regulations contain

particular its dissolution provisions are not sufficiently complex to warrant abstention out of deference to a more-knowledgeable state regulator. Indeed, courts are routinely asked to opine on whether "persistent fraudulent conduct" has mandated dissolution of a corporation.[38] Moreover, abstention is not required "where there is a potential for conflict with state regulatory law or policy from federal litigation, but only where there would be 'undue' federal interference.[39] There is no such concern here. Indeed, it is NYAG that is upending an established regulatory scheme by pursuing this unprecedented action.

Even if James' contention were correct, however, abstention is not required "even in cases where the state has a substantial interest if the state's regulations violate the federal constitution."[40] In addition, where federal issues predominate—as they do here—abstention is not favored.[41] In distinguishing a constitutional challenge to the regulatory interpretation requested in *Burford*, for example, the Supreme Court noted that "[h]ere, by contrast, important federal interests are implicated such as those embodied in the Fourteenth Amendment's due process clause, the Food

---

no broad terms requiring interpretation by a state agency or experts in the field."); *see also LILCO v. Cuomo*, 666 F. Supp. 370 (N.D.N.Y. 1987) ("Resolution of LILCO's claims will not threaten the uniform *application* of any regulatory scheme by creating potentially inconsistent interpretations of those regulations, nor do the issues raised in LILCO's Complaint require special expertise beyond the province of this court.") (*citing Harris v. Pernsley*, 755 F.2d 338, 344 (3d. Cir. 1984)).

[38] *See, e.g., People v. Oliver Schools, Inc.*, 206 A.D.2d 143 (4 Dept 1994); *State of New York v. Cortelle Corp.*, 38 N.Y.2d 83 (2 Dep't 1975); *People v. Therapeutic Hypnosis, Inc.*, 83 Misc.2d 1068 (N.Y. Sup. Ct. 1975); *State of New York v. Saksniit*, 69 Misc.2d 554 (Sup. Ct. N.Y. Cnty. 1972); *People v. B.C. Assocs., Inc.*, 22 Misc.2d 43 (Sup. Ct. N.Y. Cnty. 1959).

[39] *New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350, 362 (1989).

[40] *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir.1998); *see also Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988) ("The state has no right to an unconstitutional policy, coherent or otherwise.") (internal citation omitted).

[41] *Markel v. Blum,* 509 F. Supp. 942, 948 (N.D.N.Y. 1981).

Stamp Act, and the Medicaid Act."[42] For this reason, the Supreme Court has consistently declined to order abstention in cases involving civil rights claims[43] and this Court should decline to do the same.

## C.   The Amended Complaint States a Claim Under State Constitutional Law.

James asks this Court to dismiss the NRA's state constitutional claims based on a narrow, inapposite line of New York State authority prohibiting the duplicative maintenance of "constitutional tort" actions—*i.e.*, those seeking monetary damages—on identical grounds under Section 1983 and the New York State constitution.[44] However, this state-law restriction does not apply to claims for injunctive relief, which the NRA seeks pursuant to Counts II and IV. Moreover, the underlying logic of the cases James cites is that The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983;"[45] to the extent that the New York State Constitution recognizes rights or offers

---

[42] Citing *Orozco v. Sobol*, 703 F. Supp. 1113, 1121 (S.D.N.Y.1989) (concluding that *Burford* abstention was unwarranted where the plaintiff's § 1983 action challenged the constitutionality of aspects of New York's Education Law because constitutionality of the regulatory framework is a matter of federal law). *See also McNeese v. Bd. of Ed. For Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963) ("Here, plaintiffs' section 1983 claims neither implicate the procedures of a state administrative agency nor raise state-law issues of only local concern. On the contrary, plaintiffs allege that defendants have deprived them of their constitutional rights—claims that plainly arise under federal law and that 'are entitled to be adjudicated in federal courts.'").

[43] *See, e.g., Harman v. Forssenius*, 380 U.S. 528, 533-34 (1965); *Griffin v. County School Bd. of Prince Edward Cnty.*, 377 U.S. 218, 228-29 (1964); *Baggett v. Bullitt*, 377 U.S. 360, 375-79 (1964).

[44] Motion at 18, citing *Felmine v. N.Y.C.*, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012) (noting that private cause of action under New York Constitution is only available when there are no alternative remedies); *see also Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001).

[45] *Allen v. Antal*, 665 Fed. App'x 9, 13 (2d Cir. 2016).

remedies *not* cognizable at common law or under federal law, James' authorities are inapposite.[46] Courts have long recognized that speech protections under the New York State Constitution and United States Constitution are not coextensive: instead, New York's protections are broader.[47] Therefore, the NRA's state and federal constitutional claims are not merely duplicative, and both sets of claims should proceed.

### D.   The Amended Complaint States a First Amendment Claim.

James disingenuously argues that the NRA has not stated a First Amendment claim because there "is no First Amendment right to use charitable funds on no-show consulting contracts, approving lavish expenditures for insiders, and other violations of applicable law."[48] She then argues that because the NRA has not challenged the individual fraud-based causes of action that the NRA concedes that her investigation and dissolution suit are legitimate.[49] This misses the point. The protected activity at issue here is not "fraud" or "other violations of applicable law." It is the NRA's Second Amendment advocacy, which James nowhere states is fraudulent or otherwise a violation of law. Unlike the cases James cites, this is not a situation where the speech at issue was alleged to be fraudulent and therefore not protected.[50] The crux of this lawsuit is that *because of* the NRA's

---

[46] *See, e.g.*, *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018) (allowing state-constitutional claims to proceed, notwithstanding comparable remedies under the federal constitution, because the New York State Constitution permits respondeat-superior liability and Section 1983 does not).

[47] *Immuno A.G. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991).

[48] Motion at 20.

[49] *Id.*

[50] *E.g.*, *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) (telemarketers retained by charity made "knowingly deceptive and materially false" statements to donors that a significant amount of each dollar donated would be paid to the charity for specifically identified charitable endeavors); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 710 (S.D.N.Y. 2018) (oil company alleged to have "misled investors and the public about its knowledge of climate change and the potential effects that climate change may have on Exxon's

protected speech, which James has consistently derided and promised to silence, James commenced an investigation and has chosen a punishment—dissolution—which does not fit any alleged offense. "It has long been established that certain adverse governmental action taken in retaliation against the exercise of free speech violates the First Amendment."[51]

To state a First Amendment retaliation claim, the NRA must adequately plead that "(1) [it] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [its] exercise of that right; and (3) the defendant's actions caused [it] some injury."[52] Contrary to James' assertion, the allegations in the complaint provide an "obvious explanation" for James' decision to commence a dissolution action. As demonstrated in the complaint and noted by numerous commentators, the New York Attorney General appears to have *never* sought dissolution on these grounds before.[53] This more than satisfies the "but for" analysis typically undertaken in Section 1983 cases. NYAG argues that an "obvious alternative explanation" exists that undercuts the facial plausibility of the NRA's claims—namely, the alleged "evidence of pervasive and illegal contact by and within the NRA."[54] As the NRA has alleged however, and as NYAG's own complaint and James' own statements make clear—there is no such evidence. NYAG's allegations against the NRA amount to no more than alleged looting by a handful of executives that James herself stated outright at her press conference was able to occur

---

business); and *United States v. Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005) (defendant alleged to have included false statement in immigration application).

[51] *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992).

[52] *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

[53] Am. Compl. ¶¶ 37-38.

[54] Motion at 21.

because of *negligence* by the NRA board's audit committee.[55] There are no allegations of fraud or criminality on the part of the NRA as an organization or its members. This conduct is no different in substance than the allegations NYAG has made in the past against directors of other non-profits, and in *none* of those cases has NYAG sought dissolution. There can be little doubt that absent James' political animus, dissolution would never have been sought on this record.[56] Finally, with respect to chilling effect, the result of the dissolution action if she prevails will be to destroy the NRA and seize its assets. This threat of "specific future harm" is sufficient to satisfy pleading an injury under the First Amendment.[57]

## E. The Amended Complaint States an Equal Protection Claim.

James argues that the NRA's failure to challenge her state allegations of "pervasive fraud" undercut the NRA's Equal Protection claim and do not rebut the "presumption of good faith" to

---

[55] *See* Transcript of Letitia James' August 6, 2020 press conference, *available at* https://www.rev.com/blog/transcripts/ny-attorney-general-letitia-james-sues-nra-press-conference-august-6 ("The NRA's board's audit committee was *negligent* in its duty to ensure appropriate competent and judicious stewardship of assets by NRA leadership. . . [a]nd as a result of that, we've come to the conclusion that the NRA, unfortunately, was serving as a personal piggy bank to four individual defendants.") (emphasis added).

[56] NYAG cannot fall back on the presence of its other causes of action and ask this Court to ignore the ramifications of including dissolution causes of action. *See, e.g.*, Motion at 22 ("Further, given that the NRA has not contested the OAG's non-dissolution claims, it admittedly would have to defend itself in the State Enforcement Action in any event and so cannot even try to claim the defense costs of the litigation as an injury."). In addition to reputational damage, seeking dissolution in this case is no different than seeking the death penalty in a criminal prosecution. It significantly raises the stakes and changes the calculus of any further settlement or the necessity to litigate. Indeed, one legal commenter opined (in discussing how unprecedented and dangerous this particular relief is) that "it's possible that James never intended to dissolve the NRA, and that the dissolution remedy is simply leverage to get the NRA to settle on terms favorable to the attorney general." *See* Alan Z. Rozenshtein, *The Attempt to Dissolve the NRA Threatens Democratic Norms*, LAWFARE (Aug. 11, 2020), https://www.lawfareblog.com/attempt-dissolve-nra-threatens-democratic-norms. Regardless of whether there is any merit to NYAG's remaining claims, the NRA is uniquely harmed by NYAG's decision to seek its dissolution.

[57] *See Laird v. Tatum*, 408 U.S. 1 (1972).

which she believes she is entitled for commencing her unprecedented action. But James has not

pled "pervasive fraud" but rather misconduct by four individuals, two of whom are no longer at

the NRA (contrary to the false distinction that executives at other non-profits had left prior to

NYAG action).[58] Indeed, in numerous other settlements with non-profits, the New York Attorney

General included required reconstitution of the non-profits' boards *because* problematic

individuals were still at the non-profits during the investigation and even at the time of

settlement.[59] In any event, James never bothered to engage with the NRA regarding the other

individuals or with respect to other remedial actions before moving forward with a dissolution

claim[60] based on the fig leaf statement that any remedial attempts would be "futile." Moreover,

James' claim that the "sham" language required for dissolution does not appear in the not-for-

profit corporation law ignores that it is pervasive in the relevant case law and borne out by decades

of enforcement actions taken by the NYAG. The Trump Foundation was likened to a sham. The

Attorney General's own complaint in that action stated that the Foundation became "little more

---

[58] Motion at 22-23.

[59] *See, e.g.*, NYAG's 2013 settlement with the National Arts Club, https://ag.ny.gov/press-release/2013/ag-schneiderman-obtains-950k-settlement-former-national-arts-club-leaders-years ("The Club also has agreed to complete the process of reconstituting its Board of Governors."); NYAG's 2013 settlement with the Therapy and Learning Center, Inc., https://ag.ny.gov/press-release/2013/ag-schneiderman-secures-240k-head-brooklyn-pre-school-settling-charges-self ("The settlement requires Kuper . . . to resign her positions as the Executive Director and a board member of TLC . . . . Pursuant to the settlement, TLC will reconstitute its board of directors . . . ."); NYAG's 2012 settlement with Marcus Garvey Nursing Home, https://ag.ny.gov/press-release/2012/ag-schneiderman-recovers-871000-self-dealing-former-ceo-marcus-garvey-nursing ("Under the terms of the settlement, Weston will . . . sever any remaining connections to both nursing homes . . ."); NYAG's 2012 settlement with Educational Housing Services, Inc., https://ag.ny.gov/press-release/2012/ag-schneiderman-obtains-55-million-settlement-self-dealing-leading-not-profit ("Attorney General Schneiderman's investigation found that George Scott, EHS's President *until he was removed last month*, misused EHS as a vehicle to generate personal wealth and subsidize his lavish lifestyle. . . . Attorney General Schneiderman's settlement also requires a complete changeover in EHS's board of directors.")

[60] *See* Rogers Decl. ¶ 4.

than a checkbook" for a political campaign with no functioning board. And for the same reasons explained *infra* at Section F, the NRA has adequately pled that impermissible considerations motivated the decision to bring a dissolution claim.

## F.     The NRA Has Standing to Assert First Amendment Claims on Behalf of Its Members.

James argues that the NRA lacks standing to assert Section 1983 claims on behalf of its members.[61] Where, as here, Plaintiff is an entity, standing may be established either (i) directly, based on an injury to the entity itself, *i.e.* organizational standing, or (ii) in the organization's representative capacity, based on the injuries to its members, *i.e.* associational standing, "[a]n organization has 'standing in its own right to seek judicial relief from injury to itself,' where the organization 'meet[s] the same standing test that applies to individuals,' *i.e.* the organization has an injury-in-fact fairly traceable to a defendant's conduct and likely redressable by a favorable court decision."[62] Here, the NRA alleges that James' actions have injured the NRA's associational rights to engage in Second Amendment advocacy and to chill the NRA's "future exercise of such freedom of association and have resulted in and will continue to result in significant damages, including, but not limited to, damage due to reputational harm, as well as injury to the NRA's trade, business, or profession."[63] The NRA further alleges that "James' threatened, and actual, regulatory and civil reprisals are a blatant and malicious retaliation campaign against the NRA and its constituents based on her disagreement with the content of their

---

[61] Citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) ("it is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983"); and *N.Y. State Citizens' Coal. for Children v. Velez*, 629 F. App'x 92, 93 (2d Cir. 2015).

[62] *See Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

[63] *See* Am. Compl. ¶¶ 80, 88.

speech. This wrongful conduct threatens to destabilize the NRA and chill the speech of the NRA, its members, and other constituents." In addition, the NRA alleges that James' "pretextual 'investigation' not only caused the NRA to incur millions of dollars in unnecessary expenditures, James then turned around and used those expenditures as the basis to claim a violation of New York's Prudent Management of Institutional Funds Act in support of the NRA's dissolution. The NRA will now further incur more needless costs litigating a dissolution action that, in essence, will require litigation regarding actions the NRA has already commenced against vendors and other wrongdoers like Ackerman McQueen."[64]

To establish associational standing, a plaintiff must allege that: "(a) [an organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[65] The Second Circuit has held that an organization asserting associational standing need not identify individual members with standing to sue in the pleadings, but rather may generally allege that one or more of its members has suffered redressable injury.[66,67] The NRA satisfies the test for associational standing:

---

[64] *Id.* ¶ 52; *see also Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 325 (S.D.N.Y. 2020) ("The impairment may come in the form of an organization being "force[d to] divert money from its other current activities to advance its established organizational interests" or where an organization has to spend "money to combat activity that harms its organization's [sic] core activities.") (citing *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110-11 (2d Cir. 2017)).

[65] *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320 (S.D.N.Y. 2020), (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *accord Am. Psychiatric Ass'n v. Anthem Health Plans*, Inc., 821 F.3d 352, 362 (2d Cir. 2016)).

[66] *See Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006).

[67] The NRA avers that there remains an arcane "limitation on association standing [that] appears to be unique to the Second Circuit," *see Christa McAuliffe Intermediate School PTO, Inc.*

Page **17**

- The NRA has pleaded that James' intentional actions are designed to punish the NRA and its members for associating to engage in Second Amendment advocacy and to chill NRA members' future exercise of such freedom of association […]"[68]
- The interests at stake are germane to the purpose of the NRA, which is the "foremost defender of the Second Amendment to the United States Constitution"[69]
- Finally, neither the claims asserted, nor the relief requested require individuals members' participation in the lawsuit, because the NRA seeks declaratory and injunctive relief for the its members (as well as for the NRA).[70] The NRA also seeks damages which do not require individual participation in the lawsuit.[71]

Under either theory, the NRA has standing to pursue claims on behalf of its members.

**G.      James' Challenge to the As-Applied Constitutionality of New York's Not-for-Profit Corporation Law is Premature.**

James asks this Court to dismiss outright the NRA's challenge to the application of New York's Not-for-Profit Corporation Law to it because, she argues, statutes of general applicability are subject to intermediate scrutiny and the NRA has therefore failed to state a claim.[72] The NRA does not at this preliminary stage address the merits of this claim, with which it disagrees. Neither should this Court. The constitutionality of the application of this law to the NRA will turn on significant factual questions inappropriate for resolution on a motion to dismiss. For this reason, courts in this Circuit have routinely declined to address such challenges so early in litigation.[73] In

---

*v. de Blasio*, 364 F. Supp. 3d 253, 271 (2019), upon which this Court recently relied in dismissing associational claims brought by the NRA on behalf of its members in *National Rifle Ass'n of Am. v. Cuomo et. al.*, No. 20-cv-385 (MAD/DJS), 2020 WL 4732110 (N.D.N.Y. Aug. 14, 2020). This strand of Second Circuit case law is directly contrary to more recent Supreme Court decisions expressly permitting associational standing, including *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), and the NRA is currently appealing the *Cuomo* decision.

[68] *See* Am. Compl. ¶¶ 80, 88.

[69] *Id.* ¶ 1.

[70] *Id.* at XIII (request for relief).

[71] *See e.g. Fla. Paraplegic Ass'n v. Martinez*, 734 F. Supp. 997, 1001 (S.D. Fla. 1990).

[72] Motion at 31-32.

[73] *See, e.g., United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019) (collecting cases).

any event, disagreement about the applicable level of scrutiny in no way constitutes a failure to state a claim under Rule 12(b)(6).

## H.    James Has No Qualified or Absolute Immunity from Liability.

James invokes her position as Attorney General to shield herself from monetary liability. As she herself notes, however, government officials *are not protected* from liability for civil damages where "their conduct . . . violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."[74] That is clearly the case here.

The Second Circuit has made clear that prior to a "formal legal proceeding" being initiated and the existence of probable cause for the proceeding, officials' conduct is deemed to be investigative, and absolute immunity does not exist.[75] Nor does "the mere fact that a . . . later [proceeding is] convene[d] . . . automatically serve to cloak . . . prior investigatory actions with the protection of absolute immunity."[76] Here, the conduct alleged in the Complaint was investigative in nature. Indeed, the NRA alleges that James' actions as NYAG—including, but not limited to, the investigation into the NRA's tax-exempt status—were done under color of state law and undertaken directly in response to and substantially motivated by the NRA's political speech

---

[74] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[75] *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *see also Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 230-31 (E.D.N.Y. 2014) (denying absolute immunity for the deputy town attorney with respect to investigative work prior to the filing of the formal complaint, including encouraging another defendant to file the formal complaint); *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 386 (W.D.N.Y. 2012) (opining that "'[a]ctions taken prior to the start of a formal legal proceeding are not entitled to absolute immunity because prior to the start of such a formal proceeding, the prosecutor has not stepped into his role as an advocate.'") (quoting *Simon v. City of N.Y.*, 819 F. Supp. 2d 145, 149 (E.D.N.Y. 2011)).

[76] *See Anilao v. Spota*, 2018 WL 6190519, at *16 (E.D.N.Y. Nov. 28, 2018).

regarding the right to keep and bear arms.[77] The Complaint further alleges that James chose to exercise her discretion to initiate an investigation into the NRA's business practices to harm the NRA based on the content of the NRA's speech regarding the Second Amendment.[78] Further, any ambiguity regarding absolute immunity should be resolved after discovery. Indeed, "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss."[79]

Qualified immunity is a fact-specific inquiry that should be undertaken after fact discovery. Qualified immunity rarely supports a motion to dismiss.[80] Dismissal on grounds of qualified

---

[77] *See* Am. Compl. ¶ 56; *see also White v. Lee*, 227 F.3d 1214, 1228-29 (9th Cir. 2000) (United States Department of Housing and Urban Development officials could be held liable for investigation that threatened free speech).

[78] *Id.* ¶ 57.

[79] *See Hill v. City of New York*, 45 F.3d 656, 663 (2d Cir. 1995); *see also Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 732 (S.D.N.Y. 2012) (delaying decision on whether a prosecutor was immune in an abuse of process claim because the role the prosecutor played "is a factual dispute that cannot be resolved on this motion [to dismiss]"); *Anilao v. Spota*, 774 F. Supp. 2d 457, 485 (E.D.N.Y. 2011) (deferring judgment on whether the prosecutors were acting as investigators or advocates in Section 1983 case); *Hickey v. City of N.Y.*, 2002 WL 1974058, at *4 (S.D.N.Y. Aug. 26, 2002) (reserving judgment on whether prosecutors were immune from false arrest and conspiracy claims since "the presence or absence of absolute immunity turns on what the prosecutor is alleged to have done, and not on the legal theory advanced or the label attached to the cause of action").

[80] *See McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004) (holding that a qualified immunity defense may be presented during a motion to dismiss, but "the defense faces a formidable hurdle when advanced . . . at this preliminary stage"); *see also Jones*, 465 F.3d at 63-64 (refusing to grant summary judgment on qualified immunity grounds because of factual disputes); *Munoz v. City of N.Y.*, 2008 WL 464236, at *7 n.6 (S.D.N.Y. Feb. 20, 2008) (same); *Torres v. Faxton St. Lukes Healthcare*, 2017 WL 11317906, at *2 (N.D.N.Y. Jan. 26, 2017) ("a defendant seeking qualified immunity at the 12(b)(6) stage 'will generally face a difficult road' because a pre-answer challenge to the pleadings is necessarily confined to a consideration of a plaintiff's yet-untested factual allegations, which are often egregious.") (quoting *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015)); *Carpenter v. Comm'r, IRS*, 2016 WL 7238792, at *14 (D. Conn. Dec. 14, 2016) (observing that in many cases a motion to dismiss does not "fairly present" an

immunity here would be particularly inappropriate because such a defense is highly fact specific. Indeed, James' unlawful conduct, including her decision to initiate a wrongful investigation into the NRA's business practices, require detailed factual analysis that cannot be ascertained at this stage.[81] In addition, a defendant may not invoke qualified immunity with respect to violations of clearly established constitutional law.[82] This standard does not require that an official commit specific acts which have "previously been held to be unlawful;"[83] instead, wherever the unlawfulness of the alleged conduct would be "apparent" based on pre-existing law, qualified

---

appropriate stage for determining qualified immunity); *Bush v. City of Utica*, 558 F. App'x 131 (2d Cir. 2014)  (affirming denial of qualified immunity at pleadings stage); *Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012)  (same)).

[81] *See Munoz v. City of N.Y.*, 2008 WL 464236, at *7 n.6 (S.D.N.Y. Feb. 20, 2008) ("Clearly, without a factual resolution of the sharply conflicting versions of these events, it is not possible to determine whether defendants are qualifiedly immune.") (internal quotation marks omitted); *see also Bernstein v. City of N.Y.*, 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007) ("Because the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6).'") (quoting *Walker v. Mendoza*, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) (alterations in original)); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[t]he fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence *at trial*."); *Balakrishnan v. Kusel*, 2009 WL 1291755, at *9 (E.D.N.Y. May 8, 2009) (determining that "genuine issues of material fact preclude summary judgment on plaintiff's selective enforcement claim also preclude a grant of qualified immunity"); *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998) (refusing to apply qualified immunity and explaining that "application of the doctrine [of qualified immunity] to claims in which an element of the violation is an unconstitutional motive or intent . . . creates the difficulty of . . . denying litigants the opportunity to present proof of that intent"); *Children First Found., Inc. v. Martinez*, 2005 WL 600283, at *3 (N.D.N.Y. Mar. 14, 2005) (determining that defendants "should assert qualified immunity in their answer and then proceed to a motion for summary judgment").

[82] *See Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) ("A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.").

[83] *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

immunity vanishes.[84] Here, the NRA alleges that James' actions as NYAG—including, but not limited to, the investigation into the NRA's tax-exempt status—were done under color of state law and undertaken directly in response to and substantially motivated by the NRA's political speech regarding the right to keep and bear arms. James has acted with the intent to obstruct, chill, deter, and retaliate against the NRA's core political speech, which is protected by the First Amendment.[85] The Amended Complaint further alleges that James' decision to seek dissolution constitutes impermissible selective enforcement of the New York Not-for-Profit Corporation Law by NYAG. Both the U.S. and New York constitutions prohibit the government from applying or enforcing a valid law "with an evil eye and unequal hand."[86] Courts have routinely found that it is "clearly established that selective enforcement of a facially valid law based on an official's dislike of protected expression is unlawful."[87]

Finally, James argues that the NRA's Section 1983 claims must be dismissed because she is entitled to qualified immunity under New York State law.[88] However, New York law does not

---

[84] *See id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (opining that the legal right violated by the public official need not have been specifically articulated by a court to be clearly established at the time of the violation).

[85] *See* Am. Compl. ¶ 56.

[86] *Id.* ¶ 41 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886); *303 West 42nd St. v. Klein*, 46 N.Y.2d 686 (1979)).

[87] *See Burns v. Citarella*, 443 F. Supp. 2d 464, 470 (S.D.N.Y. 2006) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 2005 WL 2445794, at *17 (E.D.N.Y. Sept. 30, 2005)); *see also Massi v. Flynn*, 254 F. App'x 84, 87 (2d Cir. 2007) (holding that "there can be no dispute" that the constitutional right to be free from selective treatment is clearly established); *Bush v. City of Utica, N.Y.*, 558 F. App'x 131, 134-35 (2d Cir. 2014) (same).

[88] Motion at 35-36.

govern James' entitlement to qualified immunity with respect to the NRA's federal claims.[89] With respect to those claims referencing violations of the state constitution, New York's qualified immunity doctrine does not apply to bad faith actions such as those alleged here.[90] James is therefore not entitled to qualified immunity from the NRA's claims.

## **CONCLUSION**

For the foregoing reasons, the Court should deny James' motion to dismiss in its entirety.


Dated: December 21, 2020

Respectfully submitted,


By: ___/s/ William A. Brewer III_____
     William A. Brewer III
     wab@brewerattorneys.com
     Sarah B. Rogers
     sbr@brewerattorneys.com

**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE**
**ASSOCIATION OF AMERICA**

---

[89] *See, e.g.*, *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) ("state law governs a defendant's entitlement to qualified immunity with respect to state-law claims") (citing *Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991)).

[90] *See Rothman v. City of New York*, 2020 WL 2139328, at *4 (S.D.N.Y. May 5, 2020) ("New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis.") (quoting *Parmley*, 465 F.3d at 63).