UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THE NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC.,                                    20-CV-00889 MAD TWD

                              Plaintiffs,

                v.

LETITIA JAMES, both individually and in
her official capacity,

                              Defendant.

_____


## ATTORNEY GENERAL LETITIA JAMES'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO DISMISS

                                        LETITIA JAMES
                                        *Attorney General*
                                        *State of New York*
                                        28 Liberty Street
                                        New York, New York 10005




Monica Connell
James Sheehan
Yael Fuchs
Stephen Thompson
Assistant Attorneys General
*of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

   I.   THE NRA'S STATE CONSTITUTIONAL CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT AND NEW YORK STATE LAW. .................................. 1

   II.   ABSTENTION IS APPROPRIATE HERE. ...................................................................... 2

      A.  The NRA's attempts to avoid application of the *Younger* abstention doctrine are unavailing. .................................................................................................................... 2

      B.  The NRA cannot overcome *Burford* abstention. ........................................................ 6

   III.   THE NRA FAILS TO STATE A FIRST AMENDMENT CLAIM. .................................. 7

   IV.   THE NRA CANNOT SAVE ITS EQUAL PROTECTION CLAIM. .............................. 10

   V.   THE NRA'S CHALLENGE TO THE CONSTITUTIONALITY OF THE N-PCL DISSOLUTION STATUTES IS NOT IMMUNE TO A MOTION TO DISMISS. ........ 12

   VI.   THE NRA HAS FAILED TO ESTABLISH ASSOCIATIONAL STANDING TO BRING A § 1983 CLAIM. ............................................................................................. 13

   VII.   THE ATTORNEY GENERAL IS ENTITLED TO BOTH ABSOLUTE AND QUALIFIED IMMUNITY. ............................................................................................. 13

      A.  The Attorney General is entitled to absolute immunity for her actions in commencing and prosecuting the State Enforcement Action. ........................................................ 13

      B.  The NRA's claims for monetary relief are barred by state and federal qualified immunity. .................................................................................................................... 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alliance of American Insurers v. Cuomo*,
  854 F.2d 591 (2d Cir. 1988) ................................................................7

*Alwan v. City of New York*,
  311 F.Supp.3d 570 (E.D.N.Y. 2018) ....................................................2

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
  821 F.3d 352 (2d Cir. 2016) ...............................................................13

*Application of Smith*,
  2 A.D.2d 67 (1st Dep't 1956) ...............................................................3

*Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*,
  448 F.3d 138 (2d Cir. 2006) ...............................................................13

*City of New York v. Brown*,
  465 N.Y.S.2d 388 (Civ. Ct. 1982) .........................................................3

*City of Oneida, NY v. Salazar*,
  2009 WL 3055274 (N.D.N.Y. Sept. 21, 2009) ......................................12

*Cont'l Ins. Co. v. Polaris Indus. Partners, L.P.*,
  199 A.D.2d 222 (1st Dep't 1993) ..........................................................3

*Cutie v. Sheehan*,
  2014 WL 4794195 (N.D.N.Y. Sept. 25, 2014) ......................................11

*Dear v. Bd. of Elections in City of New York*,
  2003 WL 22077679 ..............................................................................12

*Dones v. City of New York*,
  2008 WL 2742108 (S.D.N.Y. July 9, 2008) ..........................................11

*Edelman v. Jordan*,
  415 U.S. 651 (1974) ..............................................................................7

*England v. Louisiana State Bd. of Med. Examiners*,
  375 U.S. 411 (1964) ..............................................................................3

*Ex parte Young*,
  209 U.S. 123 (1908) ..............................................................................1

*Felmine v. City of New York*,
2012 WL 1999863 (E.D.N.Y. June 4, 2012) ..................................................2

*Hachamovitch v. DeBuono*,
159 F.3d 687 (2d Cir. 1998)............................................................... 6-7

*Hill v. City of New York*,
45 F.3d 653 (2d Cir. 1995)................................................................14

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp.3d 378 (S.D.N.Y. 2014)........................................................3

*Kamholtz v. Yates Cnty.*,
2008 WL 5114964 (W.D.N.Y. Dec. 3, 2008) ...............................................11

*Kirschner v. Klemons*,
225 F.3d 227 (2d Cir. 2000)...............................................................6

*Kugler v. Helfant*,
421 U.S. 117 (1975)..................................................................... 3-4

*Laird v. Tatum*,
408 U.S. 1 (1972)........................................................................10

*Liu v. New York City Campaign Fin. Bd.*,
2015 WL 1514904 (S.D.N.Y. March 31, 2015) .............................................12

*Luongo v. Wenzel*,
404 F. Supp. 874 (E.D.N.Y. 1975) .........................................................4

*Markel v. Blum*,
509 F. Supp. 942 (N.D.N.Y. 1981) .........................................................7

*Meese v. Keene*,
481 U.S. 465 (1987)......................................................................9

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
701 F. Supp. 2d 568 (S.D.N.Y. 2010).....................................................11

*MyInfoGuard, LLC v. Sorrell*,
2012 WL 5469913 (D. Vt. Nov. 9, 2012) ...................................................3

*N.Y. State Citizens' Coal. for Children v. Velez*,
629 F. App'x 92 (2d Cir. 2015) ...........................................................13

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019)...................................................................7

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011).................................................................................13

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) .........................................................................9

*Pearson v. Callahan*,
    55 U.S. 223 (2009).................................................................................................14

*Pen Am. Ctr., Inc. v. Trump*,
    448 F. Supp. 3d 309 (S.D.N.Y. 2020).................................................................13

*Pennhurst State School & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................................1

*Perez v. Ledesma*,
    401 U.S. 82 (1971)..................................................................................................4

*Rubeor v. Town of Wright*,
    191 F. Supp.3d 198 (N.D.N.Y. 2016) ..................................................................14

*Ruffin v. Lion Corp.*,
    15 N.Y.3d 578 (2010) .............................................................................................3

*Salvador v. Lake George Park Comm'n*,
    2001 WL 1574929 (N.D.N.Y. Mar. 28, 2001) .....................................................15

*Schlagler v. Phillips*,
    166 F.3d 439 (2d Cir. 1999)............................................................................ 2, 4-5

*SLG Graybar LLC v. John Hannaway Law Off.*,
    182 Misc.2d 217 (Civ Ct., N.Y. Co. 1999).............................................................3

*Soos v. Cuomo*,
    470 F. Supp. 3d 268 (N.D.N.Y. 2020) ...................................................................6

*Spear v. Town of West Hartford*,
    954 F.2d 63 (1992)................................................................................................14

*Steffel v. Thompson*,
    415 U.S. 452 (1974)................................................................................................4

*Sullivan v. Metro. Transit Auth. Police Dept.*,
    2017 WL 4326058 (S.D.N.Y. Sept. 13, 2017)........................................................2

*Temple of Lost Sheep Inc. v. Abrams*,
    930 F.2d 178 (2d Cir. 1991)....................................................................................4

*Williams v. State*,
    77 Misc.2d 396 (N.Y. Ct. Claims 1974) ...............................................................3

*Zherka v. Amicone*,
    634 F.3d 642 (2d Cir. 2011)...................................................................................9

**STATE STATUTES**

N-PCL
    § 1101.......................................................................................................................10
    § 1102.......................................................................................................................10
    § 1109.......................................................................................................................10

**RULES**

Fed. R. Civ. P. 12 ...............................................................................................................1

**MISCELLANEOUS AUTHORITIES**

Beth Reinhard, Katie Zezima, Tom Hamburger and Carol Leonning, *NRA money*
    *flowed to board members amid allegedly lavish spending by top officials and*
    *vendors*, WASHINGTON POST (June 9, 2019, 9:22 PM) ............................................9

Fredreka Schouten, *NRA board member criticizes Wayne LaPierre, urges group*
    *to 'clean' house*, CNN (May 14, 2019, 8:42 PM),
    https://www.cnn.com/2019/05/14/politics/nra-board-member-
    lapierre/index.html ...................................................................................................9

Sebastian Murdock, *4 NRA Board Members Resign in Latest Sign of Dissent in*
    *Gun Group*, HUFFINGTON POST (August 2, 2019),
    https://www.huffpost.com/entry/national-rifle-association-
    resignations_n_5d4452e7e4b0acb57fcb9ef9 ...........................................................9

LETITIA JAMES, Attorney General of the State of New York respectfully submits this reply memorandum of law in further support of her motion, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint (Dkt. No. 13) (the "Am. Compl."), in its entirety, with prejudice.

## PRELIMINARY STATEMENT

In her moving memorandum (Dkt. No. 20) ("AG Mem."), the Attorney General established that the NRA's attempt, through this federal action, to shield itself from regulatory review of its pervasive and persistent illegal conduct fails and its claims are subject to dismissal. In its memorandum of law in opposition to the motion to dismiss (Dkt. No. 26) ("NRA Mem."), the NRA consistently misstates or misapprehends relevant law, blatantly mischaracterizes the allegations in the State Enforcement Action, and fails to address the fatal weaknesses in its claims. As set forth in the Attorney General's moving papers and below, this action is subject to dismissal.

## ARGUMENT

**I.      THE NRA'S STATE CONSTITUTIONAL CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT AND NEW YORK STATE LAW.**

The NRA misapprehends Eleventh Amendment immunity, particularly as applied to bringing state constitutional claims against the Attorney General.  In response to the Attorney General's arguments, the NRA incorrectly argues that (1) the Eleventh Amendment does not bar its claims for injunctive relief under the State constitution and (2) the constitutional tort cases cited by the Attorney General are inapposite. NRA Mem. at 11-13, 18.

First, the exception to the Eleventh Amendment for prospective injunctive relief in *Ex parte Young*, 209 U.S. 123 (1908), does not apply to alleged violations of state law. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Therefore, the NRA's claims for injunctive or declaratory relief arising out of the New York State constitution are barred.

Second, the NRA has no damages remedy against the Attorney General in her individual capacity for alleged violations of the New York State constitution because no such claim exists where there is an adequate alternative remedy in § 1983. *See Felmine v. City of New York*, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012) (collecting cases). The NRA fails to demonstrate how its associational rights or selective enforcement claims under state constitutional law differ from their federal counterparts, and so admits that it fails to state a claim with respect to those claims.

With respect to its freedom of speech retaliation claim, the NRA argues that, because the state constitution affords more protection than the First Amendment, the NRA has a damages remedy against the Attorney General in her official capacity. NRA Mem. at 11-12. But that distinction only matters where the right alleged to be violated is one that exists under the New York State constitution but is not protected by § 1983.[1] Here, the NRA has not alleged violations of the New York State constitution's protections for alleged speech retaliation that are broader than those redressable by § 1983, and so has no claim for damages under the state constitution. *See Sullivan v. Metro. Transit Auth. Police Dept.*, 2017 WL 4326058, at *10 (S.D.N.Y. Sept. 13, 2017) (dismissing freedom of speech claim under New York State constitution because plaintiff's § 1983 First Amendment retaliation cause of action provided an adequate alternative remedy).

## II. ABSTENTION IS APPROPRIATE HERE.

### A. The NRA's attempts to avoid application of the *Younger* abstention doctrine are unavailing.

Where the criteria for *Younger* abstention are met, abstention is mandatory. *Schlagler v. Phillips*, 166 F.3d 439 (2d Cir. 1999). Here, the NRA's efforts to avoid *Younger* abstention are transparent attempts to foreclose regulatory action and, as set forth below, are unavailing.

---

[1] In *Alwan v. City of New York*, 311 F.Supp.3d 570, 587 (E.D.N.Y. 2018), cited by the NRA, the court declined to dismiss a state constitutional claim premised on a theory of respondeat superior against the municipal defendant, because § 1983 does not permit such a theory for recovery. *Id.*

The NRA argues that there was not an ongoing state proceeding, a criteria for *Younger* abstention, when it commenced this action. NRA Mem. at 8-9. As a matter of fact and of law, the State Enforcement Action constitutes an ongoing proceeding here since it was commenced before this action. But even if the NRA's claim that an alleged error in the verification somehow means the action was not commenced — and the law is clear that it is not, *see* AG Mem. at 14-16[2] —the action would still be considered "ongoing" for the purposes of *Younger* abstention.[3] The NRA fails to rebut the Attorney General's authority on this point. AG Mem. at 15, at fn. 14.

The NRA likewise cannot avoid *Younger* abstention with the unfounded blanket assertion that the state courts are too biased or "parochial" to hear § 1983 claims. NRA Mem. at 6. The only authorities that the NRA offers are a 1970 law review article that briefly mentions potential bias in state courts and dicta in a concurrence in *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 428 (1964), which noted that federal judges, too, can be biased and ultimately affirmed abstention. Moreover, the Supreme Court has rejected claims of state court bias for *Younger* purposes, even where a state's former chief justice and other judges themselves were named as defendants in the state proceedings. *Kugler v. Helfant*, 421 U.S. 117, 124-126 (1975).

---

[2] The issue of which action was filed first is currently pending before the court in the State Enforcement Action. *See People v. National Rifle Association*, Sup. Ct. N.Y. Co. Index No. 451625/2020 (Dkt. Nos 70-193, generally). In any event, the law is clear that an alleged error in a verification, at issue here, does not render the action a nullity. *See Ruffin v. Lion Corp.*, 15 N.Y.3d 578, 582 (2010); *Cont'l Ins. Co. v. Polaris Indus. Partners, L.P.*, 199 A.D.2d 222, 223 (1st Dep't 1993); *Application of Smith*, 2 A.D.2d 67, 69 (1st Dep't 1956); *SLG Graybar LLC v. John Hannaway Law Off.*, 182 Misc.2d 217, 221-22 (Civ Ct., N.Y. Co. 1999); *City of New York v. Brown*, 465 N.Y.S.2d 388, 389 (Civ. Ct. 1982); *Williams v. State*, 77 Misc.2d 396, 399 (N.Y. Ct. Claims 1974).

[3] *See* AG Mem. at 15; *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp.3d 378, 409 (S.D.N.Y. 2014) (federal court was required to abstain under *Younger*, even though the federal action was, through procedural gamesmanship, filed prior to state enforcement action); *MyInfoGuard, LLC v. Sorrell*, 2012 WL 5469913, at *8 (D. Vt. Nov. 9, 2012) ("*Younger* abstention only requires that the state action be initiated 'before any proceedings of substance on the merits have taken place in federal court.'") (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)).

Notably, the NRA makes no specific factual allegations of bias or parochialism in New York County Supreme Court in its Amended Complaint or its motion papers. Indeed, it would have trouble doing so as the NRA itself sought to have the State Enforcement Action heard in the Commercial Division of the Supreme Court, stating "[t]his is precisely the type of complex commercial dispute that belongs in the Commercial Division." *See* State Enforcement Action Dkt No. 26 (September 16, 2020 NRA letter requesting assignment to Commercial Division).

Further, under the NRA's theory, state courts would never be appropriate venues for § 1983 claims. This assertion is patently untrue and is contrary to countless decisions finding that state courts are fully capable of adjudicating federal constitutional claims. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 460 (1974); *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir. 1991).

Finally, the NRA incorrectly asserts that this case falls under the narrow "bad faith" or "exceptional circumstances" exceptions to *Younger*. NRA Mem. at 7. What the NRA fails to address is that "'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler*, 421 U.S. at 126; *Perez v. Ledesma*, 401 U.S. 82, 85 (1971) (holding that to fall under the bad faith exception, state proceeding would have had to be commenced "without hope of obtaining a valid conviction.").[4]

The NRA relies on *Schlagler v. Phillips*, 166 F.3d at 443, but there, the Second Circuit reversed a district court's refusal to abstain, clarifying that *Younger* "narrowly limited exceptions [to abstention] to cases involving retaliatory or bad-faith efforts to regulate speech," and refused

---

[4] Abstention by this Court does not, as the NRA implies, rob it of the ability to assert constitutional claims. *See* NRA Mem. at 2. "'State courts are quite as capable as federal courts of determining the facts, and they alone can define and interpret state law…[S]tate courts share with federal courts an equivalent responsibility for the enforcement of federal rights, a responsibility one must expect they will fulfill.'" *Luongo v. Wenzel*, 404 F. Supp. 874, 878 (E.D.N.Y. 1975) (abstaining under *Younger*), quoting *Schlesinger v. Councilman*, 420 U.S. 738 (1975).

to allow these exceptions to "swallow the Younger rule," reiterating that they apply when "no valid prosecution could be secured and no valid, good faith basis for the prosecution could exist." *Id.*

That is not and cannot be the case here, where the NRA does not challenge the legitimate basis of the State Enforcement Action other than the Attorney General's request for the remedy of dissolution. This concession of the validity of the other claims and requests for relief, alone, should end the inquiry. Moreover, given the thorough pre-complaint investigation, the NRA's acknowledged inaccurate regulatory filings, the whistleblower complaints, the public accounts of dysfunction and corruption, and the evidence identified in the complaint, the State Enforcement Action cannot reasonably be deemed a civil prosecution which has no good faith basis and no valid hope for success. *See* AG Mem. at 4-6, 21; Am. Compl., Ex. 1 at ¶¶ 10, 220, 226, 263, 266, 279, 452-53, 472-73 484-497, 544-48. The NRA has not met its burden to satisfy the "bad faith" exception to abstention under *Younger.*

The NRA also argues that the "extraordinary circumstances" exception to *Younger* abstention applies because it alleges a First Amendment injury. Using the NRA's logic, *Younger* abstention could never apply to a First Amendment claim, which of necessity must include a First Amendment injury. Yet *Younger* itself was a First Amendment case and there, the Supreme Court held that "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." 401 U.S. at 51. In fact, the Supreme Court in *Younger* held that a federal court should not interfere in an ongoing state action unless "the threat to the plaintiff's federally protected rights [is] one that cannot be eliminated by his defense against a single criminal prosecution." *Id.* at 46. Here, as set forth below, the NRA fails in its Amended Complaint to even allege an actionable First Amendment injury, nevertheless one that cannot be addressed by defense against a single state proceeding. It has not

shown the requisite "extraordinary circumstances" justifying federal intrusion into state proceedings.

Since the NRA has failed in its burden to establish one of the narrow exceptions to *Younger*, abstention is appropriate. *Kirschner v. Klemons*, 225 F.3d 227, 237 (2d Cir. 2000).

### B. The NRA cannot overcome *Burford* abstention.

The NRA's opposition to the application of *Burford* abstention fails because it is premised on the baseless contention that the federal court is better positioned than the Attorney General, in the state court, to enforce New York's Not-for-Profit Corporations Law ("N-PCL"); Estates, Powers and Trusts Law; and Executive Law, all of which vest the Attorney General with expansive authority to oversee not-for-profit entities. NRA Mem. at 9-10. The NRA's theory turns the state-based regulatory scheme, and accepted principles of federalism and comity, on their heads.[5]

The NRA does not make a serious effort to argue against *Burford* abstention. The analysis set forth in the cases it cites, like *Hachamovitch v. DeBuono*, 159 F.3d 687, 697–98 (2d Cir. 1998), favor abstention. Specifically, the state regulatory scheme here is complex, the Court's failure to abstain would require the federal court "to give one or another debatable construction" to state statutes, and the regulation of charities is unquestionably traditionally a matter of state concern. Should the Court refuse to abstain, it may risk engaging in precisely the type of "meddl[ing]" that is prohibited by *Burford*, *Id.*, *i.e.*, determining "considerations, values and procedures that should

---

[5] In opposition to the Attorney General's motion to dismiss, a group of Attorneys General filed an amicus brief with this court. Dkt. No. 25. The Amici neither sought nor obtained permission to file their brief. The Amici also have not set forth their particular interests in this matter. Since their unauthorized brief largely duplicates arguments made by the NRA, it does not offer assistance to the Court in resolving the issues presented. *See Soos v. Cuomo*, 470 F. Supp. 3d 268, 284 (N.D.N.Y. 2020). The brief does, however, underscore the importance of state regulation of charitable organizations and the breadth of the State's regulatory scheme, key factors in support of abstention. Dkt. No. 25 at 3-4, 15.

shape" the outcome under the State's complex statutory scheme.  *Id.*[6]

### III.    THE NRA FAILS TO STATE A FIRST AMENDMENT CLAIM.

The NRA's rhetoric notwithstanding, the Attorney General's investigation and the State Enforcement Action are an appropriate and lawful exercise of her authority to oversee charitable assets.[7]  There is no constitutional violation where, as set forth above, the state law enforcement agency charged with oversight of charities finds evidence of wrongdoing and brings suit seeking a variety of remedies, all grounded in its authority and discretion, and all of which will be before the state court for factual and legal resolution.

The NRA does not dispute that a First Amendment retaliation claim requires that the alleged improper motivation was the "*but for*" cause of the defendant's actions.  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *see* NRA Mem. at 13 (citing *Mozzochi v. Borden*, 959 F.2d 1174 (2d Cir. 1992) (rejecting plaintiff's First Amendment claims where a bona fide reason for the state action existed).  The NRA cannot satisfy this requirement because the record is replete with evidence of systemic illegality.  The NRA may seek to minimize the wrongdoing as "looting by a

---

[6] The NRA's remaining contentions fail.  NRA Mem. at 10. Relying only on *Markel v. Blum*, 509 F. Supp. 942 (N.D.N.Y. 1981), it argues that federal questions predominate in the State Enforcement Action.  But there, the court was interpreting the federal Social Security Act and held that "no truly independent state concern exists that would be disrupted by review in this action." *Id.* at 948. Based on *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988), the NRA argues that *Burford* won't apply when the state's regulations violate the constitution. There, however, the court was ruling on the constitutionality of a statute as written; there were no "factual determinations….at issue." *Id.*  Here, by contrast, the NRA asks this Court to intervene in a state action that would require this Court to resolve complex questions of fact and law pertaining to state oversight of charities. These cases support the application of *Burford* abstention.

[7] The Attorney General's investigation ended prior to the commencement of this action.  Any injunctive or declaratory relief the NRA seeks with regard to the Attorney General's investigation (*see, e.g.,* NRA Mem. at 12-13), is necessarily retroactive in nature and thus barred by the Eleventh Amendment.  *Edelman v. Jordan*, 415 U.S. 651, 676-77 (1974).

handful of executives," NRA Mem. at 13, but this characterization is belied by both the NRA's own official filings and the scope of the allegations set forth in the State Enforcement Action complaint.[8] Most saliently, one of the executives accused of such "looting" is the NRA's long-time Executive Vice-President, ex-officio board member and chief executive officer Wayne LaPierre, who remains in control of the NRA.

The NRA's most recent IRS Form 990 for 2019 admits numerous diversions of charitable assets and governance failures.[9] Additionally, in its Amended Complaint, the NRA admits that its internal investigation, undertaken in response to public reporting, resulted in findings of wrongdoing. Am. Compl. ¶ 15. In light of the numerous legitimate reasons for the Attorney General's actions, the NRA's First Amendment retaliation claim must fail.

The NRA also fails to allege harm to its First Amendment rights as a result of the Attorney

---

[8] While the NRA is apparently accepting of "looting by a handful of officers," the individuals named as defendants therein were in top positions at the NRA, had substantial authority and control over the organization's operations, and, in the case of defendants LaPierre and Phillips, held those positions for decades. Further, as noted elsewhere, defendants LaPierre and Frazer continue in their positions. And, in any event, the State Enforcement Action asserts systemic, pervasive, long running violations of the law *by the NRA*, including the NRA's violation of numerous laws; lack of oversight of expenditures; allowance of waste and misuse of charitable assets; long-running self-dealing with board members without requisite disclosures and approvals; false filings; improper setting and reporting of officer compensation; whistleblower retaliation; and suppression of reform efforts. *See, e.g.,* Am. Compl., Ex. 1 at ¶¶ 308, 365, 401, 408, 473, 487, 531.

[9] The NRA IRS Form 990 for 2019 admits, among other things, that two of the named defendants— Powell and LaPierre—along with various other current and former employees– collectively received more than $1 million in excess benefits in the form of improperly reimbursed travel and other expenses. Connell Reply Aff., Ex.G, pp. 86-87. The NRA further admits that it did not have or failed to implement policies regarding first class travel, housing allowances and other benefits, and that an unspecified number of Board members "may have" violated the NRA's travel policies. *Id.* p. 87. These admissions in its Form 990, among others, undermine the NRA's contention that the Attorney General's investigation and complaint are without merit. *See* Am. Compl, Ex. 1, ¶¶ 140-215, 247-252, 498-517 (detailing improper expenditures and related party transactions). Furthermore, these and other admissions in the 2019 Form 990 support the Attorney General's allegations that the NRA made false and misleading statements in prior filings. *Id.* ¶¶ 544-48.

General's actions. The Attorney General's moving brief established that the two conclusory paragraphs in the Amended Complaint alleging the "threat" of destabilization or chilling harm were legally insufficient. AG Mem. at 22; Am. Compl. at ¶¶ 51-52. The NRA now pivots to a theory of "reputational injury" as a result of one remedy sought in the Attorney General's action (NRA Mem. at 14, fn. 56). This theory, alleged only in the most conclusory manner in its Amended Complaint, is also not adequate. *See Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (allegations of defamation inadequate to establish injury for First Amendment retaliation claim).

Nor has the NRA plausibly linked any reputational harm to the request for judicial dissolution; any such harm is more likely a result of the publicity surrounding its financial and governance misconduct, including the highly public dissent from within its ranks.[10] *See Meese v. Keene*, 481 U.S. 465, 476 (1987) (alleged injury to reputation must be "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief") (internal quotation marks omitted). The NRA did not establish the requisite link in its Amended Complaint and cannot do so now by cursory argument in its motion papers. *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

Likewise, the NRA fails to plead any injury in the form of a chilling effect. And the NRA's own language, complaining of the potential "result of the dissolution action *if she prevails…*"

---

[10] *See e.g.* Fredreka Schouten, *NRA board member criticizes Wayne LaPierre, urges group to 'clean' house*, CNN (May 14, 2019, 8:42 PM), https://www.cnn.com/2019/05/14/politics/nra-board-member-lapierre/index.html; Beth Reinhard, Katie Zezima, Tom Hamburger and Carol Leonning, *NRA money flowed to board members amid allegedly lavish spending by top officials and vendors*, WASHINGTON POST (June 9, 2019, 9:22 PM), https://www.washingtonpost.com/investigations/nra-money-flowed-to-board-members-amid-allegedly-lavish-spending-by-top-officials-and-vendors/2019/06/09/3eafe160-8186-11e9-9a67-a687ca99fb3d_story.html; Sebastian Murdock, *4 NRA Board Members Resign in Latest Sign of Dissent in Gun Group*, HUFFINGTON POST (August 2, 2019), https://www.huffpost.com/entry/national-rifle-association-resignations_n_5d4452e7e4b0acb57fcb9ef9.

(NRA Mem. at 14, emphasis added) highlights the speculative nature of its claim. The case cited by the NRA in its opposition, *Laird v. Tatum*, 408 U.S. 1 (1972), does not help its argument. In *Laird*, the Supreme Court rejected plaintiffs' First Amendment claims as too speculative, and reiterated the well-established principle that to adequately plead a First Amendment injury, plaintiffs must "ha[ve] sustained or [are] immediately in danger of sustaining a direct injury as the result of that action." *Id.* at 13. No such immediate danger has been, nor can be, alleged here. Dissolution depends on the outcome of the litigation in state court, where the NRA will have the opportunity to defend against the merits of the Attorney General's claims. *See* N-PCL §§ 1101, 1102 and 1109(b). Further, the inchoate and speculative theory that seeking dissolution "raises the stakes and changes the calculus" of settlement and litigation—a theory not alleged in the Amended Complaint—cannot establish the type of harm required for a First Amendment retaliation claim.

## IV.     THE NRA CANNOT SAVE ITS EQUAL PROTECTION CLAIM.

The NRA's Equal Protection claim is premised on the Attorney General asking the state court to consider dissolution as a potential remedy. Like its First Amendment claim, this claim fails because the NRA does not —and cannot— adequately plead that it has been treated differently from similarly situated charitable organizations due to impermissible considerations.[11] It has not rebutted the Attorney General's showing that its Amended Complaint relies upon a mischaracterization of the allegations in the State Enforcement Action and a misstatement of the

---

[11] Contrary to the NRA's misreading of the Attorney General's motion, the Attorney General does not rely on a single case to prove that its actions are part of a "bona fide rational pattern of general enforcement." NRA Mem. at 2. Rather, she cites a range of matters in which the Attorney General sought and obtained dissolution, among other remedies. *See* AG Mem. at 25-27. The NRA also ignores salient differences in cases where the entity was not dissolved, including the procedural posture of the matter, damages paid, admissions made, and fiduciary bans imposed.

relevant legal standards for an Equal Protection claim.[12]

Courts require meaningful similarity between the plaintiff and comparators, a standard that the NRA has failed to satisfy. *See Kamholtz v. Yates Cnty.*, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (rejecting claims where plaintiff failed to show an "extremely high" level of similarity at pleading stage) *aff'd* 350 F. App'x 589 (2d Cir. 2009); *Dones v. City of New York*, 2008 WL 2742108, at *7, 9 (S.D.N.Y. July 9, 2008) (applying "very high standard of similarity" to claim of selective treatment); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (dismissing equal protection claim because of inadequate allegations that comparators were similarly situated.); *see also Cutie v. Sheehan*, 2014 WL 4794195, at *16 (N.D.N.Y. Sept. 25, 2014), aff'd, 645 F. App'x 93 (2d Cir. 2016) (the proponent of selective enforcement claim must establish that it was treated differently from others who were similarly situated in all material respects). The cases cited in the NRA's Amended Complaint, along with those added in its opposition, where the Attorney General *did not* seek dissolution, are not similar for a variety of reasons; most notably, all involved settlements in which the charities agreed to overhaul their leadership. Further, the NRA cannot compare itself to cases involving isolated wrongdoing, because that is plainly not what the Attorney General alleges in the State Enforcement Action.[13] *See* AG Mem. at 7, 9; Am. Compl., Ex. 1, ¶¶ 308, 401, 408, 473, 487, 531.

---

[12] In a seeming admission that it had misstated the legal standard for judicial dissolution, the NRA has shifted gears from arguing that the Attorney General must prove that the organization is a sham, to the assertion that the "sham language" appears in relevant caselaw and the Attorney General once likened a charitable entity to a sham in a complaint which sought dissolution. NRA Mem. at 15. The proper statutory standard for dissolution is articulated in the N-PCL and the allegations of the complaint meet this standard, as a matter of pleading.

[13] The NRA's repeated citation that two individual defendants in the State Enforcement Action have left the NRA is also not meaningful. First, the State Enforcement Action alleges misconduct involving many officers, directors, and employees, *see e.g.* Am. Compl., Ex. 1, ¶¶ 338-395, 498-517. Second, the NRA ignores that the circumstances under which defendant Wilson Phillips left

Given the bona fide reasons for seeking dissolution, the NRA cannot make the requisite showing that the request to seek such remedy—which is well within the Attorney General's authority—was motivated by animus. As such, the NRA has failed to meet its high burden to overcome the presumption of regularity here.

## V. THE NRA'S CHALLENGE TO THE CONSTITUTIONALITY OF THE N-PCL DISSOLUTION STATUTES IS NOT IMMUNE TO A MOTION TO DISMISS.

The NRA tries to evade the Attorney General's motion to dismiss its as-applied constitutional challenge to the N-PCL dissolution statutes by incorrectly arguing that such claims are immune to dismissal at this stage. NRA Mem. at 18-19. However, courts frequently dismiss as-applied challenges for failure to state a claim based on the pleadings. *See*, *e.g.*, *Citizens United*, 882 F.3d at 385 (affirming dismissal of as-applied challenge to charity regulation); *see also Liu v. New York City Campaign Fin. Bd.*, 2015 WL 1514904, at *9 (S.D.N.Y. March 31, 2015) (dismissing as-applied challenge to campaign finance regulation); *Dear v. Bd. of Elections in City of New York*, 2003 WL 22077679, at *13-16 (dismissing as-applied challenge to local election law); *City of Oneida, NY v. Salazar*, 2009 WL 3055274, at *3-5 (N.D.N.Y. Sept. 21, 2009) (dismissing as-applied challenge to Indian Reorganization Act).

The one case the NRA cites in support of its argument actually militates in favor of abstention here. In *United States v. Raniere*, the court held that the defendant's motion to dismiss a criminal indictment was premature, reasoning that the defendant "must wait to bring an as-applied vagueness challenge until the facts have been established by evidence introduced at trial

---

are the basis for allegations of misconduct. Phillips was allowed to retire of his own accord, with benefits, a pension and a lucrative "no show" consulting contract (¶¶ 231-237). Further, two of the individual defendants are the current NRA chief executive officer and general counsel and secretary to the Board. Their continued direction of the NRA undermines the organization's attempt to minimize the State Enforcement Action to allegations of isolated bad conduct by a handful of individuals.

and the fact-finder has had an opportunity to weigh in." 384 F.Supp.3d 282, 320 (E.D.N.Y. 2019) (internal quotation marks omitted). Here, the NRA must wait for the Attorney General to develop its case in state court before alleging that the dissolution statutes are unconstitutional as applied.

## VI. THE NRA HAS FAILED TO ESTABLISH ASSOCIATIONAL STANDING TO BRING A § 1983 CLAIM.

In its opposition, the NRA fundamentally misunderstands the applicable associational standing inquiry. The Second Circuit precedent is clear: the NRA does not have standing to assert § 1983 claims on behalf of its members. *Nnebe v. Daus,* 644 F.3d 147, 156 (2d Cir. 2011); *N.Y. State Citizens' Coal. for Children v. Velez*, 629 F. App'x 92, 93 (2d Cir. 2015) (summary order).

In arguing otherwise, the NRA misreads the law and relies upon cases where the traditional test for associational standing is followed to allow an organization to assert the rights of its members in relation to non-§ 1983 claims. NRA Mem. at 16-18; *see, e.g., Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc*., 448 F.3d 138 (2d Cir. 2006) (action under the Resource Conservation and Recovery Act and Clean Water Act); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016) (action under the Mental Health Parity and Addiction Equity Act and Employee Retirement Income Security Act); *Pen Am. Ctr., Inc. v. Trump,* 448 F. Supp. 3d 309 (S.D.N.Y. 2020) (action against federal officers). As the NRA has not set forth any legitimate basis for associational standing, such claims fail.

## VII. THE ATTORNEY GENERAL IS ENTITLED TO BOTH ABSOLUTE AND QUALIFIED IMMUNITY.

### A. The Attorney General is entitled to absolute immunity for her actions in commencing and prosecuting the State Enforcement Action.

In its attempt to dispute the applicability of absolute immunity, the NRA mischaracterizes both the nature of the conduct with respect to which the Attorney General is entitled to immunity and the claims asserted in its own Amended Complaint. Contrary to the NRA's contention, the Attorney General does not claim absolute immunity over her decision to initiate an investigation

or for conduct during that investigation. *See* NRA Mem. at 19.  Instead, the Attorney General seeks and is entitled to absolute immunity with respect to her decision to commence a state enforcement proceeding against the NRA. *See* AG Mem. at 34; *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995); *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (1992). There is no factual question barring application of absolute immunity here.

## B. The NRA's claims for monetary relief are barred by state and federal qualified immunity.

The NRA's assertion that qualified immunity cannot be resolved on a motion to dismiss, NRA Mem. at 20, is legally unsound. First, qualified immunity is an immunity from suit, not just from liability. As such, the question of whether the doctrine applies must be decided "at the earliest possible stage in litigation." *Rubeor v. Town of Wright*, 191 F. Supp.3d 198, 205 (N.D.N.Y. 2016) (quoting *Pearson v. Callahan*, 55 U.S. 223, 231 (2009)). Second, the qualified immunity analysis does not, as the NRA suggests, "require [a] detailed factual analysis that cannot be ascertained at this stage." NRA Mem. at 21. Qualified immunity applies where an official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (internal quotation omitted). That standard does not require a factual inquiry and is easily met here. The NRA does not have a "clearly established" right to be free from an enforcement action, particularly where a duly authorized investigation found credible evidence of misconduct. In fact, that is precisely the type of conduct that is objectively reasonable. The NRA's conclusory assertion that it has a clearly established right to be free from selective enforcement is also not sufficient.  In *Ashcroft v. al-Kidd*, the Supreme Court held that restating a general constitutional proposition "is of little help in determining whether the violative nature of particular conduct is clearly established" for purposes of qualified immunity.  563 U.S. 731, 742 (2011).  The inquiry is context-specific and asks if "[t]he contours of the right [are] sufficiently

clear in the context of the alleged violation such that a reasonable official would understand that what he is doing violates that right." *Salvador v. Lake George Park Comm'n*, 2001 WL 1574929, at *4 (N.D.N.Y. Mar. 28, 2001), *aff'd* 35 F. App'x 7 (2d Cir. 2002) (internal quotations and citations omitted). For example, in *Salvador*, the court dismissed a selective enforcement claim on qualified immunity grounds, despite allegations of defendant's animus, holding that the defense "is based on whether an official's acts were objectively reasonable. . . . Thus, the motivation of the individual official is irrelevant to the determination of whether he is entitled to qualified immunity." *Id*.

Here, the NRA alleges selective enforcement of the dissolution claims only, not challenging any of the other claims against it, which are based on some or all of the same facts. Nor has it alleged that the claims against its current and former officers are meritless. There is no clearly established right to be free from a particular remedy being sought in a regulatory enforcement action, and the NRA cannot rely upon the alleged motivation of the Attorney General to overcome her entitlement to qualified immunity on these facts.

## CONCLUSION

For the foregoing reasons, Attorney General Letitia James respectfully requests that the Court issue an order dismissing this action in its entirety and granting such other and further relief as it deems just and proper.

Dated: January 4, 2021
     New York, New York

LETITIA JAMES
*Attorney General*

Monica Connell
James Sheehan
Yael Fuchs
Stephen Thompson
Office of the Attorney General
Assistant Attorneys General of Counsel
28 Liberty Street
New York, New York 10005
212-416-8965